## Webb's Estate.

*Parent and child—Adopted child—Right to inherit—Children of adopted child—Act of May 9, 1889, P. L. 168.*

1. The word "heir" when unexplained and uncontrolled by the context must be interpreted according to its strict and technical import, in which case it obviously designates the persons appointed by law to succeed to the real estate in case of intestacy.

2. The Act of May 9, 1889, P. L. 168, which provides that an adopted child "shall have all the rights of the child or heir of such adopting parent," invests the adopted child with the right to become the heir-at-law of the adopting parent, and with this investment goes the right of succession in the legal heirs of such adopted child, so that in case such child is not living at the

death of the adopting parent, his or her heirs would succeed, as he or she would have done if living.

3. Testatrix died intestate, leaving to survive her the children of an adopted child, who had died prior to decedent's death. At the settlement of the estate of decedent, these children claimed the share which their mother would have taken if living. *Held,* the Orphans' Court erred in disallowing the claim and ordering distribution of the fund among the collateral kindred of the intestate.

Argued March 15, 1915. Appeal, No. 89, Jan. T., 1915, by Louis B. Gillette, Guardian of Donald M. Beckwith, a minor child of Margaret MacFarlane Webb Beckwith, deceased, from decree of O. C. Bradford Co., Dec. T., 1914, No. 21, dismissing exceptions to report of auditor, in Estate of Mary Munson Webb, deceased. Before BROWN, C. J., POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Reversed.

Exceptions to report of Charles M. Culver, Auditor. Before MAXWELL, P. J.

The opinion of the Supreme Court states the facts.

The court dismissed the exceptions. Louis B. Gillette, guardian of Donald M. Beckwith, appealed.

*Errors assigned* were in dismissing the exceptions.

*Rodney A. Mercur,* for appellant.

*A. C. Fanning,* of *Fanning & Kaufman,* with him *Le-Vant D. Lester,* for appellee.

OPINION BY MR. JUSTICE STEWART, July 3, 1915:

The question here to be determined arises in connection with the distribution of the personal estate of Mrs. Mary Munson Webb, who died a widow, intestate, 31st October, 1912. Mrs. Webb left no lineal descendants. She had, however, in 1901, under the provisions of the Act of 9th May, 1889, P. L. 168, adopted as her child

and heir one Mary MacFarlane who afterwards became
the wife of J. W. Beckwith, but died in the year 1910,
two years prior to the death of Mrs. Webb, her foster-
mother, leaving to survive her two children, one of
whom, Daniel M. Beckwith, by his guardian is here the
appellant. On behalf of this minor the claim was made
before the auditor that he was entitled to receive by
succession the one-half of what his mother would have
been entitled to receive had she survived the intestate.
The auditor disallowed the claim and distributed the
fund to and among the collateral kindred of the intes-
tate. His report having been confirmed by the court the
question of appellant's right comes to us by appeal.

By the terms of the Act of 9th May, 1889, the person
adopted thereunder as the child of another becomes
entitled to all the rights of a child and heir of the adopt-
ing parent. The rights thus conferred are of course
strictly legal rights, such as are created by law; and
in this particular instance the only right involved re-
lates to property. What right, that is to say, what en-
forceable claim or title has one born in lawful wedlock
to the property of the parent? Just as we measure the
right of such an one, so we must measure the right of
Mrs. Beckwith, the parent of the claimant, in the estate
of this intestate. Only by so doing can we accord to her
the full benefit of the statute under which she became a
child by adoption. It is a mere truism that no right in
the child to any of the property of the parent arises out
of the mere parental relation, so long as the parent sur-
vives. It is the right of the parent to do with the prop-
erty as he or she sees fit, and it is only when the parent's
dominion over it is terminated by death that anybody
succeeds to that right. If the parent who has the legal
right to appoint a successor in right die without making
such appointment, in such case the law appoints as the
successor the surviving child, or children if more than
one, and the issue, if any, of any deceased child. It is
only at this point of time, the death of the parent, that

the law gives the child any right, title or claim to the property of the parent. If the child be not then living, his right must be taken to have died with him. So then, Mrs. Beckwith having died prior to the death of Mrs. Webb, the intestate, it may be argued, and is, that notwithstanding she never came into possession of any property of her adopting parent, she, nevertheless, enjoyed every property right in connection therewith that would have been hers had she been a natural instead of an adopted child, and that nothing in the way of right survived to her children. The argument against such proposition is, of course, that once made a child by the law the legal incidents to the parental relation attached, among them the right of representation under the intestate laws of the State. Certainly as thus stated, the question as to what was the legislative purpose, would be at least debatable, as the present controversy abundantly shows, a circumstance which lends force, as we think, to the view we are about to express. If the Act of 9th May, 1889, had done no more than invest the adopted person with the rights of a child, this debatable question would have been the determining one, and unvoidable in any such controversy as we have here. It was to obviate any such question and make clear the legislative purpose, that the act proceeds further and invests the adopted party not only with the rights of a child, but with the rights of an heir. The language of the act is "shall have all the rights of a child and heir of such adopting parent." The two words "child" and "heir" do not have the same meaning. The employment of the two, if there were nothing else, is sufficient to indicate that to each was given a meaning of its own. By the word "heir" we are to understand the person appointed by law to succeed in cases of intestacy to the estate in question. One manifest distinction is this, that whereas the word "child" may import succession, having in mind the provisions of our intestate laws, the word "heir" certainly does so import. No one can be the heir of a living

person; so when the act declares that the adopted person shall be the heir of the adopting parent the reference must be to the death of the parent; and it is to be read just as though it said in terms that upon the death of the adopting parent the child adopted shall become his or her heir; that is to say, shall be the person in case of intestacy to succeed to the estate of the parent. While a gift to an adopted child would be held to lapse in case where he or she died in the lifetime of the adopting parent, except as the children of such an one should bring themselves within the designation of grandchildren of the adopting parent,—the exact question suggested above—yet in a gift to the heir or heirs, no matter whether in the singular or plural, the reference is to a class of persons who take by succession from generation to generation. "The word heirs, ex vi termini, implies representation; and in this respect its meaning is not changed by being coupled with the word children. It is not to be assumed that the two words are used as meaning the same thing, especially as there is an obvious reason for using both,......But in a gift to 'heirs,' or to 'children and heirs,' grandchildren, great-grandchildren, and descendants to the remotest degree, may and are entitled to take, and the persons so entitled may change from day to day after the execution of the will, and in the lifetime of the testator, both in number and degree of relationship." Ashburner's Est., 159 Pa. 545. "Like all other legal terms the word 'heir' when unexplained and uncontrolled by the context must be interpreted according to its strict and technical import; in which sense it obviously designates the person or persons appointed by law to succeed to the real estate in case of intestacy." Jarman on Wills, Vol. II, page 585, citing in support Porter's App., 45 Pa. 201, and Eby's App., 50 Pa. 311. And on page 612 the author adds, "And even where the entire subject of the gift is personal the word 'heir' unexplained by the context must be taken to be used in a proper sense." The cases from our own reports cited

above as clearly recognize this latter doctrine as that first above stated, and to these may be added Baskin's App., 3 Pa. 304, and Clark v. Scott, 67 Pa. 446. Without prolonging the discussion, it is quite enough to know that by the act of her adoption Mrs. Beckwith became invested with the right upon the death of Mrs. Webb to become her heir at law, and with this investment went the right of succession in her legal heirs, so that in case she were not living at the death of Mrs. Webb, as was the case, her own heirs would succeed as she herself would have done if living. Therefore it is, that into the discussion as to whether her children can be brought into the relation of grandchildren of the adopting parent so as to entitle them to take under the intestate law, we need not enter. We rest our conclusion on the fact that Mrs. Beckwith was made the heir of the adopting parent by law. It follows that Mrs. Beckwith having died, the right of succession is in her children and that the decree in the case must therefore be reversed. It is accordingly so ordered, and the record is remitted that distribution may be made in accordance with the views here expressed.