## Thomas's Estate.

*Decedents' estates — Intestate laws — Adoption — Rights of a child of adopted son in adoptive mother's estate—Acts of May 4, 1855, May 28, 1915, and June 7, 1917.*

1. Where a woman died in 1920 intestate as to most of her estate, leaving to survive her a child of an adopted son and collaterals, such child takes the portion of the estate passing under the intestate laws, to the exclusion of the decedent's collateral kin.

2. Adoption, whether by deed or judicial decree, was no part of the common law either of England or Pennsylvania, but is wholly the creature of statute.

3. The inheritance rights of a party to an adoption in the estate of the other are those only which are authorized and defined by the statute.

4. The Intestate Act of June 7, 1917, P. L. 429, divorced the matter of inheritance under adoption from previous adoption statutes, so that, subsequently to Dec. 31, 1917, when such act went into operation, the subject-matter of inheritance following adoption of minors, as well as adults, is controlled by that act.

5. In other respects the previous adoption statutes are still in force.

6. Under the Act of 1917 an adopted person becomes, to all intents and purposes, a child, heir-at-law and a member of the family of the adopting parent, being thereby invested with all the fixed rights, as well as the inchoate inheritance rights, of a natural child of such parent.

7. The statute impliedly vests reciprocal rights of inheritance in the children and descendants of the adopted person, permitting them to inherit, not only from the adopting parent, but also from the natural relatives of the latter through the gates of the channel of inheritance left open by the deaths of the original adopting and adopted persons.

8. As the issue of an adopted person has precisely the same inheritance rights in the adoptive parent's estate as have the issue of a natural child of such parent, such adoptive issue will take and inherit through such adopted person by succession and representation.

9. It seems that the Act of 1917 does not give to the children and descendants of adopted children the right to inherit from their parents' natural ascendants and collateral relations.

Petition for review of audit adjudication and decree.  O. C. Washington Co.

*Hamilton & Pipes* and *Tait & Tait*, for petitioner.

*McIlvaine, Williams & McCreight*, for executor.

*Vance & Gibson*, for guardian.

HUGHES, P. J., Feb. 6, 1922.—The controversy here for decision consists exclusively of questions of law growing out of undisputed facts. The facts, as revealed by the record, may be summarized as follows:

Frances A. Thomas, a widow, residing in Somerset Township, Washington County, Pennsylvania, on Oct. 28, 1907, instituted in the Court of Common Pleas of Washington County, under the provisions of the Act of April 22, 1905, P. L. 297, proceedings for her adopting as her child and heir one Howard C. Devore, then of the age of sixteen years past, a son of Harry L. Devore and his former wife, then Harriett E. McNall, which proceedings resulted in said court entering a decree under said date, Oct. 28, 1907, authorizing such adoption and ordering and decreeing that such Howard C.

Devore should thereupon "assume the name of Howard C. Thomas, and henceforth have all the rights of a child and heir of said Frances A. Thomas and be subject to the duties of such child."

Howard C. Thomas subsequently married, and on Nov. 6, 1918, died intestate, survived by his adoptive parent, Frances A. Thomas aforesaid; his wife, Ethel M. Thomas; and one child, Della Elizabeth Thomas, born on Sept. 27, 1917, as guardian of whose estate this court, by decree under date Sept. 22, 1919, appointed one John S. C. Herron, who, in such capacity, appears for and represents such minor's interests in this proceeding.

The said adopting parent, Frances A. Thomas, died on Sept. 22, 1920, testate as to a portion of her estate, but intestate as to the residue (the greater part) thereof, survived by no spouse or natural child or issue, but by the said Ethel M. Thomas, widow, and Della Elizabeth Thomas, daughter, of said Howard C. Thomas, then deceased (adopted son of said testatrix as aforesaid), and by certain collateral relatives, consisting of nieces and nephews, children of her six deceased brothers and sisters, the petitioner, J. O. Horning, being the only child of Cordelia Long Horning, a sister of said Frances A. Thomas, who had died May 11, 1911.

On Sept. 25, 1920, the will of the said Frances A. Thomas was duly admitted to probate, letters testamentary being thereupon issued to W. L. McIlvaine, nominated in the will to be executor thereof. On June 20, 1921, the first and final account of the said executor was filed in the Register's office, and on Aug. 22, 1921, the same was presented to this court for confirmation and audit. On Sept. 9, 1921, the said account coming duly on for confirmation and audit, a petition *sur* audit was duly submitted, claims of certain creditors and distributees presented, testimony thereon taken and proofs submitted; whereupon an audit adjudication and distributing decree were executed under date Sept. 21, 1921, wherein and whereby the said account was confirmed and the residue of the personal estate remaining in the hands of the said executor, to wit, the sum of $16,869.17, was awarded and ordered paid to the estate of the said Della Elizabeth Thomas, the said minor, as the only next of kin of the said Frances A. Thomas, deceased, under the intestate laws of the Commonwealth. No exceptions having been filed *sec. reg.* to said adjudication and decree, the same became absolute Oct. 1, 1921, and thereupon, to wit, on Oct. 8, 1921, the said executor paid over to the said John S. C. Herron, as guardian of the estate of the said minor, the said balance, totaling, as aforesaid, $16,869.17, due receipt therefor being thereupon entered of record.

On Nov. 7, 1921, the said J. O. Horning, nephew of the decedent as aforesaid, presented his petition (which is the foundation of the controversy at bar), claiming that the said residue so awarded and paid to said minor should properly have been awarded to, and distributed among, himself and the other collateral blood relatives of the said decedent (as composing her next of kin) to the exclusion of the said minor, the petitioner averring that his serious sickness had prevented his filing exceptions in due time to the said adjudication and decree, and asking that such order of distribution be reviewed and that the said guardian be required to pay such $16,869.17 to the executor, and that thereupon the latter be required to pay to, and distribute the same among, the petitioner and the decedent's other blood kindred lawfully entitled thereto (as the petitioner averred) as the decedent's true next of kin under the intestate laws of the Commonwealth. A citation thereupon having been granted, answers were thereto filed by the executor and by the said guardian, the former merely asserting that he had fully complied

2 D. & C.

with and carried·out the orders of the court in accordance with the said adjudication and decree, and had, therefore, paid over the balance to the said guardian; the latter averring that the said distribution so made to him for his ward was legal and proper, and denying the rights of the decedent's collateral kindred thereto as claimed by the petitioner; the said guardian also denying the petitioner's right to or standing to ask a review of distribution as prayed for. A replication thereupon having been filed, testimony was taken and the matter thus finally brought before this court for decision.

The disputes resolve themselves into two main questions of law, to wit: (1) Who, in the distribution of the personal estate of which the said Frances A. Thomas died intestate, was lawfully entitled to take the residuary funds— the minor child of the decedent's adopted son (as found in the adjudication and decree), or the decedent's collateral kindred (as claimed by the petitioner)? (2) Should a review of the said distributing decree be granted upon the petitioner's said application therefor?

We are of the opinion that our disposition herein of the first question will render unnecessary a discussion or adjudication of the second. Let us, therefore, proceed at once to the consideration of the first of these questions.

The guardian claims for his ward such residuary funds (left after the payment of all administration expenses, debts and legacies) by virtue of and through the said adoption of her father by the decedent, maintaining that upon the death of the latter intestate (the minor's father having previously died) the said child of such adopted person, by succession and representation, acceded to those rights in the decedent's estate which her father, had he survived his foster-mother, would have had therein; and that she thus, under the intestate laws, became entitled to receive on distribution, as foster-grandchild and sole next of kin of the decedent, the whole of such residuary funds. At the audit, this claim was recognized by the auditing judge (the writer hereof), who, on the grounds that such minor had, by succeeding her father, become the lawful (and only) next of kin of the decedent, and thus, by representation, entitled to such residuary funds, awarded the whole thereof to her. The petitioner denies the legal merit of such claim, challenges the grounds upon which the same is based, and contends that the said conclusion and action of the auditing judge were error. The petitioner concedes that upon the perfection of the adoption, the said adopted person became in law the heir of his foster-mother, whereby he would have been entitled (in the event of her death intestate, leaving him surviving) to have taken by inheritance her real and personal estate as next of kin and heir-at-law, to the exclusion of her blood relatives; but contends that such right of inheritance was purely a personal one, vested in the adopted son only, and, therefore, incapable of being transferred by succession or otherwise, because expiring and terminating with his death; and that, consequently, no right to Frances A. Thomas's estate could or did pass at his death, by succession or representation, to his said child, the minor. Now, under the undisputed facts and circumstances before us, what interests or shares, if any, did the adoptive grandchild have in her adoptive grandmother's intestate estate? What rights, if any, in the properties composing such intestate estate did the said adoption of the father achieve or accomplish for his daughter? For our answer, we must turn to the statutes of the Commonwealth, remembering that inheritance (Com. v. Henderson, 172 Pa. 135 (1895); Boyd's Estate, 270 Pa. 504 (1921), as well as adoption (Carroll's Estate, 219 Pa. 440 (1908), are creatures exclusively of statute. We are here concerned in the residuary estate of an intestate estate; the object of our investigation being to determine who,

as the lawful next of kin, recognized as such by our intestate laws, is or are rightfully and legally entitled to take such funds on distribution. Whosoever claims such residuary funds by inheritance must point to the statute which transmits the same to him: Goldstein v. Hammell, 236 Pa. 305 (1912); Boyd's Estate, 270 Pa. 504 (1921). Now, if no one, not even a natural child or other blood relative, is recognized by law as having a natural right to inherit (Gunthoer's Estate, 235 Pa. 67 (1912), certainly with much greater force would the same be true as to one not of the decedent's blood: Gable's Estate, 16 Dist. R. 219 (1906). Della Elizabeth Thomas, the minor, is not of the blood of the decedent, Frances A. Thomas, and, hence, in no sense is her natural heir; consequently, a heavy burden rests upon such minor, which must be overcome, if she is to be permitted as next of kin to inherit and. take the decedent's intestate property to the exclusion of the latter's blood kindred. What, then, were the pertinent consequences of such adoption of said minor's father?

Adoption, whether by deed or judicial decree, was no part of the common law either of England or Pennsylvania, notwithstanding a reference made in the Act of April 2, 1872, P. L. 31, to "common law form of adopting a child:" Carroll's Estate, 219 Pa. 440 (1908). Adoption was first introduced into Pennsylvania by the enactment of the Act of May 4, 1855, P. L. 430: Ballard v. Ward, 89 Pa. 358 (1879); Benson v. Nicholas, 246 Pa. 229 (1914); such statute contemplating the adoption of children only. Not counting the Intestate Act of June 7, 1917, P. L. 429, as an adoption statute, the said Act of May 4, 1855, P. L. 430, has been amended by five succeeding statutes, to wit: (1) The Act of April 2, 1872, P. L. 31, covering adoption by deed; (2) the Act of April 13, 1887, P. L. 53, giving the adopting parents certain rights to inherit property theretofore derived by an adopted child from them or their kindred, and somewhat enlarging the inheritance rights of the adopted child; (3) the Act of May 19, 1887, P. L. 125, permitting adoption where a child has been neglected by its parents; (4) the Act of April 22, 1905, P. L. 297, permitting adoption of children abandoned, cruelly neglected or abused; and (5) the Act of May 28, 1915, P. L. 580, wherein is stricken out the words "and shall have all the rights of a child and heir of such adopting parent" as incorporated in the said Act of May 4, 1855, P. L. 430, and carried in the amending statutes of May 19, 1887, P. L. 125, and April 22, 1905, P. L. 297, and substituted therefor the words, "and said adopting parent and said child shall, respectively, inherit and take by devolution from and through each other personal estate as next of kin and real estate as heirs in fee simple or otherwise under the intestate laws of this Commonwealth, as fully as if the person adopted had been born a lawful child of the adopting parent;" such substituted provision, slightly remodeled, being later incorporated in the Intestate Act of June 7, 1917, P. L. 429, as clause (a) of section 16 thereof.

Adoption of adults was first authorized in Pennsylvania by the Act of May 9, 1889, P. L. 168, which was superseded by the Act of June 1, 1911, P. L. 539, which enlarged the scope and effects of, and defined the procedure in, adoption of adults.

Upon a consummation of an adoption under any of these statutes, certain mutual, fixed and present rights, duties and liabilities automatically attach to the immediate parties to such new relationship; the adopting parent gaining thereby all the rights of a natural parent, such as the custody, control, services and earnings of the adopted child, while the adopted person becomes thereby entitled to all the vested rights of a natural child, such as a home, support, clothing, medication and education. Such are the mutual and vested

2 D. & C.

rights and obligations which attach and become fixed concurrently with the completion of an adoption, but another important right (so-called) accrues as an incident to such adoption, such right, however, being purely inchoate in character, to wit, the right of inheritance; such right being created and existing to the extent defined by the succeeding adoption statutes. In order to intelligently comprehend such inheritance right, it must be remembered that, in the absence of an express contract to such effect, an adoption does not of itself give to either of the immediate parties to the adoption any fixed or vested rights in the property of the other during life or in his estate at death. In the absence of such an express contract, either party, so far as the adoption is concerned, has an absolute right during life to transfer at will his own property independently and without the consent of the other, the law allowing either party to make a valid will, although containing no provision therein for the other: Wright's Estate, 1 Dist. R. 325 (1892), affirmed in 155 Pa. 64 (1893). Now, let us direct our attention to the inheritance rights which follow an adoption, such rights being the dominant subject-matter of the present investigation.

The Intestate Act of April 8, 1833, P. L. 315, having been enacted many years before adoption was permitted in Pennsylvania, it, of course, contains no provisions relative to inheritance incidental to adoptions. While the Act of April 13, 1887, P. L. 53, amending the Act of May 4, 1855, P. L. 430, is devoted exclusively to the subject-matter of inheritance under adoptions, each of the other adoption statutes cited covers not only the circumstances and conditions upon which adoptions will be permitted thereunder and the procedure to be followed to obtain the desired decree, but also defines the inheritance to follow the adoption perfected under such act. The legislature of 1917 saw fit to divorce the matter of inheritance under adoption from the said adoption statutes and to cover such matter of adoption inheritance exclusively within the new inheritance act of that year. Consequently, the subject-matter of inheritance following adoptions of minors, as well as of adults, has been made a part of, and incorporated in, the Intestate Act of June 7, 1917, P. L. 429, as section 16 thereof; while all of the said adoption acts then existing were thereby repealed so far (and only) as they related to inheritance. This Intestate Act of June 7, 1917, P. L. 429, in express language provides that it shall take effect on Dec. 31, 1917, and shall apply to estates, real and personal, of all persons dying intestate on or after said date; section 28 specifying that the act "is intended as an entire and complete system for the descent and distribution of the estates, real and personal, of persons dying intestate" on and after such date, and concluding with a general repealer of all other acts of assembly or parts thereof in any way in conflict or inconsistent with the provisions of the said Intestate Act of June 7, 1917, P. L. 429, or any part thereof.

As Frances A. Thomas (as well as Howard C. Thomas, for that matter) died subsequently to Dec. 31, 1917, the date upon which the said Intestate Act of June 7, 1917, P. L. 429, by its terms became operative, it cannot be denied that the devolution and distribution of that part of her estate of which she died intestate is subject to the control of such statute. A perusal of the 2nd clause, comprising section 16 of this act, convinces us that the legislature intended that upon the adoption of a person, such adopted person should become, to all intents and purposes, a member of the adopting parent's family; should have the same fixed rights as the natural children of such adopting parents: Leinbach's Estate, 241 Pa. 32 (1913); but, of course, no better or higher rights: Morgan v. Reel, 213 Pa. 81 (1905); and for all pur-

poses of inheritance and devolution, should stand in precisely the same position as though such adopted person had been born a natural child.

Now, as the lawmakers have thus given an adopted child precisely the same rights of inheritance as a natural child possesses, the question arises: What rights of inheritance does a natural child possess in its parents' property? We find our answer succinctly expressed in the opinion of the Supreme Court in Webb's Estate, 250 Pa. 179 (1915), on page 181 thereof, where Judge Stewart, in delivering the opinion for the Supreme Court, uses this language: "It is a mere truism that no right in the child to any of the property of the parent arises out of the mere parental relation so long as the parent survives. It is the right of the parent to do with the property as he or she sees fit, and it is only when the parent's dominion over it is terminated by death that anybody succeeds to that right. If the parent, who has the legal right to appoint a successor in right, die without making such appointment, in such case the law appoints as a successor the surviving child, or children, if more than one, and the issue, if any, of any deceased child. It is only at this point of time, the death of the parent, that the law gives the child any right, title or claim to the property of the parent."

It is thus seen that neither a natural nor an adopted child has, during the parent's lifetime, any fixed or vested rights in the parent's property or estate. But the intestate laws of the Commonwealth vest in natural children the right to inherit by representation through their deceased ancestors, to whose rights, on their respective deaths, they succeed. Is such right of inheritance by succession vested by law in adopted children as well? What says the statute which we have determined to be applicable to and govern the present estate? Clause (a) of section 16 of the Intestate Act of June 7, 1917, P. L. 429, provides that: "Any minor or adult person adopted according to law and the adopting parent or parents shall, respectively, inherit and take by devolution from and through each other personal estate as next of kin and real estate as heirs under the provisions of this act, as fully as if the person adopted had been born a lawful child of the adopting parent or parents."

What rights were under such statutory provision vested in Howard C. Thomas by virtue of his adoption? If the statutory language under consideration means anything, it means that had he survived his foster-mother he would have inherited and taken by devolution her residuary intestate estate, to wit, the personalty thereof as her next of kin, and the realty thereof as her heir-at-law, just as though he had been born her lawful child. By said adoption this statutory provision made Howard C. Thomas her adopted child, subject, of course, to the incidental rights and duties we have found to have been fixed and vested simultaneously with the consummation of the adoption. But such adoption made him something more than a foster-child, it made him her next of kin to inherit her personalty, and her heir-at-law to inherit her realty, of which she might thereafter die intestate.

The inheritance provisions of section 16 of the Intestate Act of June 7, 1917, P. L. 429, merely enlarge on, but are precisely of the same meaning and effect as the corresponding provisions incorporated in the Child Adoption Acts of May 4, 1855, P. L. 430, May 19, 1887, P. L. 125, and April 22, 1905, P. L. 297 (under which last statute the appointment under consideration was made), and in the Adult Adoption Acts of May 9, 1889, P. L. 168, and June 1, 1911, P. L. 539, all of which adoption acts contain a provision that the adopted child "shall have all the rights of a child and heir of such adopting parent." It naturally follows, then, that the decisions of the courts relative

2 D. & C.

to inheritance under such adoption acts should be held to apply with equal force to adoption inheritance under the Intestate Act of June 7, 1917, P. L. 429.

In Webb's Estate, 250 Pa. 179 (1915), was involved the adoption of an adult under the provisions of the Act of May 9, 1889, P. L. 168. The decedent, whose estate was the subject-matter before the court, died intestate, survived by no spouse or natural issue, but by two children of a deceased foster-daughter, who, as an adult, had been adopted under the last mentioned statute, which, as has been observed, contained the said provision that the person adopted under such act "shall have all the rights of a child and heir of such adopting parent." The Supreme Court decided that, under this statutory provision, such adoptive grandchildren, by right of succession through their mother, who had died prior to the adopting parent, became the latter's next of kin, and, as such, were entitled to her residuary estate on distribution. In that case, Judge Stewart, who wrote the opinion for the Supreme Court, points out that under such statutory provision, it was the manifest intention of the lawmakers that the adopted person, by such adoption, should be invested with the rights, not only of a child, but also those of an heir; that the two words, "child" and "heir," do not have the same meaning, each having a distinct significance of its own; that the word "heir," in itself necessarily imports succession, entitling such adopted person as such heir, on the death of the ancestor, to succeed to the inheritance of his estate; and that, in the absence of anything to the contrary in the context, the word "heir" is to be interpreted in its strict and technical sense, even when applied to personalty, the learned judge citing Ashburner's Estate, 159 Pa. 545, 549 (1894), to which could be added other pertinent authorities, including the late case of Wunder's Estate, 270 Pa. 281 (1921). The Supreme Court, therefore, held that the adopted person having thus become invested with the right, upon the death of the adopting parent, to become her heir-at-law, such investment carried with it the right of succession in favor of the legal heirs of such adopted person, entitling such heirs, in the event of the latter not being alive at the time of the death of the adopting parent, to succeed to those rights in the adoptive parent's estate which the adopted person would have had had the latter survived the former, and, in accordance with such legal conclusions, awarded the entire residuary estate to the children of the adopted person as the legal next of kin of the adopting parent. The reasoning and logic of Judge Stewart in this reported case applies with full force and effect to the controversy at bar, the meaning and intendment, if not the language, of the statute he was therein construing being, as we have observed, the same as the corresponding statutory provisions of the Intestate Act of June 7, 1917, P. L. 429, which governs the controversy before us. Therefore, providing that there are no other provisions of such governing statute which forbid our here adopting the same conclusion reached in the Webb case, the latter should here be followed as a precedent to control the decision of the present controversy.

Nowhere else in the Intestate Act of June 7, 1917, P. L. 429 (which we have found controls the matter of inheritance in the estate at bar), are to be found any provisions concerning inheritance following adoptions, except in the two clauses which compose section 16 of that statute. Upon a study of the language of these two clauses, it is found that none of the provisions of either prohibit, but that all thereof support, the conclusion reached in the Webb case. Upon scrutinizing clause (a), it is observed that its provisions are devoted exclusively to the inheritance rights of the two immediate parties to the adoption, no attempt being therein made to cover the inheritance rights

of persons other than such immediate parties, such as the latter's natural or adoptive heirs or kindred. Now, upon centering our attention on the word "from," it is perceived that it contemplates and can be applicable and operative only in the event of the death of one or the other of such immediate parties to the adoption, the statute giving the survivor of such immediate parties the right to inherit and take by devolution "from" the other, the deceased party. The effect of the word "through" is farther reaching, extending the inheritance rights of both of the immediate parties so that each of them is thereby qualified to inherit, not merely from the other immediate party, but also from the latter's relatives and kindred, through the channel left open by the latter's death; it being observed that such word "through" likewise presupposes the death of such original party, leaving the other party surviving; and it being further remembered that clause *(b)* of said section limits such "relatives and kindred" of the adopted person to the latter's children and descendants. Now, in clause *(b)* of the section under consideration we find expressed the converse of the said provisions of clause *(a)*, to wit, clause *(b)* giving the adoptive relatives of the person adopted, i. e., the natural relatives and kindred of the adopting parent, the right to inherit and take not only "from" the adopted person himself, but also from his children and descendants, "through" the channel left vacant by the death of such adopted person. Thus it is seen that the statute has thrown open both gates of the channel of adoptive inheritance, permitting not only adopting parents, but also their kindred (without any limitation whatsoever and irrespective of degree of relationship), to inherit and take not only from the adopted person, but also from his children and descendants. Now, it must be admitted that the statute does not expressly provide for or authorize reverse inheritance in such line of persons, to wit, inheritance by the children and descendants of the adopted person from the adopting parent and from the latter's kindred, but such reverse or reciprocal inheritance is necessarily implied. We have seen that under clause *(a)* the adopting parent himself, and under clause *(b)* the relations and kindred of such adopting parent, are qualified to inherit from the adopting person and also from his children and descendants "through" him. What possible reason could the legislature have had to deny reciprocal or reverse inheritance rights to such children and descendants of the adopted person? No reason can be conceived, and we conclude, therefore, that the legislature did not so intend to withhold from the children and descendants of an adopted person inheritance rights reciprocal to those vested by the act in express language in the kindred of the adopting parent. The law permits a reasonable latitude in the interpretation of adoption statutes:

"While the statutes authorizing adoption are in derogation of the common law, and for this reason are, in some respects, to be strictly construed, yet their construction should not be narrowed so closely as to defeat the legislative intent which may be made obvious by their terms and by the mischief to be remedied by their enactment:" Brown's Adoption, 25 Pa. Superior Ct. 259 (1904); many jurisdictions holding that such statutes should be given a liberal intendment and operation: 1 Ruling Case Law, 595.

Accordingly, we conclude that the statute impliedly vests such reciprocal rights of inheritance in the children and descendants of the adopted person, permitting them to inherit, not only from the adopting parent, but also from the latter's natural relatives, "through" the gates of the channel of inheritance left open by the deaths of the original adopting and adopted persons.

Should any person attempt to draw a different conclusion from these statutory provisions under discussion, all grounds tending to support such con-

2 D. & C.

tention will disappear upon considering the first sentence of said clause *(b),* which in express language makes an adopted person a member of the family of the adopting parent for all purposes of inheritance and devolution. It is to be noted that the rights and benefits created by this provision are entirely without restriction or limitation, being made to apply to all persons and all estates without discrimination. It, therefore, follows that the legislature intended that the issue of an adopted person should under such enactment have the same rights as the issue of natural children of such adopting person, including the right to take and inherit through such adopted person by succession and representation.

Furthermore, as already mentioned, the statute provides that such adopted person shall not be entitled to inherit from his natural ascendants or collateral relatives, and, moreover, that such blood ascendants and collateral kindred shall be excluded from inheriting from or through such adopted person. The statute expressly stipulates, however (in the clause closing section 16), that such provision shall not interfere with the inheritance rights of the adopted person's surviving spouse or issue. The law, therefore, contemplates that there shall be no disturbance of the mutual inheritance rights existing between or among an adopted person and the latter's surviving spouse and descendants; the effect of the adoption being merely to give such adopted person, in lieu of his natural ascendants and collateral heirs, a new set of such relatives, to wit, adoptive ascendants and adoptive collateral kinsmen; the law contemplating that such adopted person shall have but one set of ascendants and collaterals. Now, were we to hold that Della Elizabeth Thomas, the adoptive granddaughter, could not succeed her deceased father in his inheritance rights in her adoptive grandmother's estate, she would, by our action, be left in a most unfortunate and regrettable position; for her father's adoption has deprived her of all hope of ever inheriting through him anything whatsoever from his natural ascendants or natural collateral heirs. Such a ruling would leave the minor deprived of all paternal ascendants and collateral kinsmen, both natural and adoptive. Surely the lawmakers had no reason, and could not have intended, to inflict such an unwarranted hardship on the issue of adopted persons.

Counsel for the petitioner takes the position, however, that such provisions of the Intestate Act of June 7, 1917, P. L. 429, do not so cut off the children and descendants of an adopted person from inheriting from their own parents' natural ascendants and collateral heirs and kindred, maintaining that while it may be true that the adopted person is himself so cut off, such, nevertheless, is not the case as to the spouse or descendants of such adopted person; the claim being made that such spouse and descendants are, by the statute, entitled to inherit from the natural ascendants and collateral heirs and kindred of the adopted person by virtue of the phrase, "but the surviving spouse of such adopted person and the children and descendants of such adopted person shall have all his, her and their respective rights under this act," which phrase appears in clause *(b)* of section 16 thereof. Petitioner's counsel draws attention to, and lays great stress upon, the word "act" in this phrase, used instead of the word "section." We consider that such position is fallacious. The implied subject-matter of the sentence (of which the phrase is a part) is the estate of an adopted person; so that the phrase under consideration can apply only to such subject-matter, and, therefore, to be read as though the word "therein" were inserted as the fourth word before the period or as though the entire phrase read, "but such inheritance by such adoptive relatives in the estates of adopted persons shall be subject to the

rights of the surviving spouse, children and descendants therein as prescribed elsewhere in this act." That this is a correct conclusion is apparent when we centre our attention on the words "surviving spouse." Let it be asked in what estate other than that of a deceased spouse could a surviving spouse have any right, interest or share whatsoever? The surviving spouse of an adopted person could not by any possibility inherit as such anything from estates either of his or her natural or adoptive relatives or of his or her deceased spouse, or, for that matter, from the estates of any person whatsoever, save only that of the deceased spouse. Such phrase, therefore, does not give to the children and descendants of adopted children the right to inherit from their parents' natural ascendants and collateral relations as claimed for such phrase by the petitioner's counsel; but such children and descendants, like their parents, have access only to the latter's adoptive ascendants and collateral relatives for inheritance benefits.

Counsel for the petitioner, in contending that the right of inheritance given by the Intestate Act of June 7, 1917, P. L. 429, to an adopted person is purely personal to such adopted person and not transmissible by succession to such adopted person's descendants, lays great stress on the decisions in those reported cases which hold that an adoption does not make the adopted person in fact a child of the adopting parent nor cause such adopted child to lose its true identity in the eyes of the law. The case of Reel's Estate, 50 Pitts. L. J. 128 (1902), cited by counsel for the petitioner in this connection, has been overruled in effect by the decision in Morgan v. Reel, 213 Pa. 81 (1915). In the other cases so cited by such counsel in this connection, Com. v. Nancrede, 32 Pa. 389 (1859); Thorp v. Com., 58 Pa. 500 (1868), it was held (and the Adult Act of May 9, 1889, P. L. 168, expressly provides) that the shares obtained by adopted persons from decedents' estates through inheritance or under testamentary disposition should be subject to the payment of collateral inheritance tax. It cannot be denied that such, indeed, was the inheritance tax law under such decisions and under said statute, and that such continued to be the law until, by section 16 of the Intestate Act of June 7, 1917, P. L. 429, adopted persons, so far as inheritance and devolution are concerned, were placed on a parity with natural children. In this connection it should be observed that the Legislature of 1917, which enacted the Intestate Act of June 7, 1917, P. L. 429, also enacted the Transfer Inheritance Act of July 11, 1917, P. L. 832, wherein adopted children are classed no longer along with collaterals, but are placed in the same group with, and taxable as, lineals, and in this later classification they are carried into the Acts of June 20, 1919, P. L. 521, and the amendment of the latter, approved May 4, 1921, P. L. 341. This change in the classification of adopted persons is another manifestation of the fixed determination of the lawmakers to abolish as to inheritances all distinction previously existing between adopted and natural children.

Counsel for the petitioner, furthermore, lay much stress upon certain other reported cases wherein the courts have denied to the issue of adopted children property which had been bequeathed or devised by adopting parents to such adopted children, but who failed to survive such disposing parents, attaching particular importance to the decision in Schafer v. Eneu, 54 Pa. 304 (1867), but many other cases may be found where, under similar facts, circumstances and conditions, contrary conclusions and decisions were reached, such as Johnson's Appeal, 88 Pa. 346 (1879), and Johnston's Estate, 29 Dist. R. 1038 (1921), in each of which the issue of adopted persons were

2 D. & C.

permitted to take by succession property composing the subject-matter of a testamentary disposition. An analysis of such allied cases shows that in none of them was the estate involved that of an intestate, but that in each of such cases the property in dispute was the subject-matter of a testamentary disposition. In each of such cases the controversy, therefore, turned and was decided upon the construed intention of the testator. The matters decided, therefore, were not questions as to the rights of adopted children to inherit, but questions of the intention of the respective testators with respect to those who were to share in their estates: Puterbaugh's Estate, 261 Pa. 235 (1918). The dispute in Phillips's Estate, 17 Pa. Superior Ct. 103 (1901), cited by petitioner's counsel, turned on an interpretation of section 12 of the Wills Act of April 8, 1833, P. L. 250, the decision therein resting largely on the ground that the lawmakers in draughting the said statute (so enacted many years before adoption was recognized or admitted in Pennsylvania) could not have contemplated or intended that any of its provisions should apply to or cover adopted persons.

For the reasons hereinbefore expressed, we reach the conclusion that Della Elizabeth Thomas, the only child and issue of Howard C. Thomas, the adopted son of Frances A. Thomas, the decedent (whose estate is the subject-matter before us), succeeded her father upon his death in the lifetime of his said foster-mother, to his right of inheritance in the latter's estate, whereby, upon the death of the said Frances A. Thomas, such adoptive grandchild became lawfully entitled to receive on distribution the residuary funds of that portion of such estate of which the said adoptive grandmother died intestate; that neither the petitioner nor any of the said decedent's collateral heirs or kindred have as such any right, interest or share in her estate by inheritance or otherwise; and that, accordingly, the adjudication and decree of this court, authorizing and directing the award of such residuary funds to the decedent's adoptive grandchild, was proper, lawful and free from error. This conclusion disposes of the first of the dominant questions of law so raised by the record and renders it unnecessary for us to consider or dispose of the said second or any other legal questions involved.

### Decree.

And now, Feb. 6, 1922, this matter came on to be heard on the petition of J. O. Horning, nephew of the decedent, for a review of the adjudication and decree of this court under date of Sept. 21, 1921, and for incidental relief, and upon answers of the executor and John S. C. Herron, guardian of the estate of Della Elizabeth Thomas, a minor, the adoptive grandchild of such decedent, and upon replication filed and testimony in due course taken, and the cause was thereupon argued by counsel and typewritten briefs submitted; whereupon, after due consideration thereof, and for the reasons assigned in the foregoing opinion, it is ordered, adjudged and decreed that the said petition be and the same hereby is dismissed, and that the citation thereunder issued be, and the same hereby is, discharged, at the cost of the petitioner.

HUGHES, P. J., opinion to above decree on exceptions, April 27, 1922.—We deem it unnecessary here to discuss at length the legal principles which, in our judgment, control the present controversy, for our views and conclusions thereon have been fully expressed and explained in our previous adjudication (to which the exception before us was subsequently filed); the able argument of the petitioner's counsel upon such exception having failed to convince us of the existence of fallacy in the reasoning there employed or of error in the

conclusions therein reached. However, a few words directed particularly at such counsel's contentions, as presented and urged in his argument *sur* said exception, may not be deemed amiss, although the same shall largely be a reiteration of what was said in our former opinion aforesaid. The reasoning of the petitioner's counsel in his argument *sur* exception follows this line:

(1) The decedent admittedly left no spouse, issue or parent; hence, under section 9 of the Intestate Act of June 7, 1917, P. L. 429 (which statute admittedly controls the devolution of the intestate portion of her estate, to wit, the subject-matter of this controversy), her collateral heirs and kindred (of whom the petitioner is one) are entitled to all of the property, real and personal of her intestate estate, unless somewhere else in said act (which admittedly furnishes the complete system for, and exclusively covers the whole scope of, intestacies happening subsequently to its becoming operative) there is to be found some provision which deprives such collateral heirs and kindred of the shares so expressly given them by said section 9.

(2) The petitioner's counsel then admitting that in case there should survive the intestate a lawfully adopted child or children, the provisions of section 16 of the said Intestate Act of June 7, 1917, P. L. 429, do so supersede and defeat such shares prescribed for the collaterals, contends that the provisions of said section 16 do not, either expressly or by implication, carry to the children or issue of such adopted person the inheritance rights thereby created and invested in the adopted person himself; claiming that such rights are purely personal to the adopted person, and, as such, die with him; that, consequently, upon the death of the said Howard C. Thomas, prior to the death of his adopting parent, the decedent, all inheritance rights which had been so created and invested in him by the said adoption expired; that, therefore, there neither remained nor existed then any such inheritance rights to his adopting mother's estate which could be passed by way of succession to his daughter, Della Elizabeth Thomas, who survived such adopting mother; and that, therefore, Della Elizabeth Thomas should not here be recognized as entitled to inherit from her father's said adopting parent.

(3) Petitioner's counsel further contends that Della Elizabeth Thomas is, under the provisions of the Intestate Act of June 7, 1917, P. L. 429, capable of inheriting from her deceased father's natural parents, to wit, her blood grandparents, under clause (*b*) of section 7 of the said Intestate Act, and that no provisions of the Intestate Act, whether in section 16 thereof or elsewhere, deprives her of such right to inherit from her natural paternal ascendants.

With such contentions and conclusions of counsel we do not agree, being still of the opinion that, although, indeed, the provisions of section 16 do not in express language so state, they indubitably imply that the inchoate inheritance rights of an adopted person in the estate of the adopting parent shall, upon the death of the adopted person in the lifetime of the adopting parent, by succession pass to and become vested in such adopted person's issue surviving the adopting parent. The dispute is thus seen to turn on the question whether or not the inheritance rights in an adopting parent's estate, so as aforesaid vested in expectancy in the adopted person, die with such adopted person or then pass by succession to the adopted person's child or issue who thereafter survive the adopting parent. Now, if the child of the adopted person has, indeed, such inheritance rights (as in our judgment it has), it derives the same only by acquisition thereof from its parent by succeeding him thereto and not on the ground that in the eyes of the law it comes into the

relation of or is considered a grandchild of the adopting person, and as such invested with a natural grandchild's inheritance rights. This distinction is recognized by the Supreme Court in its opinion in Webb's Estate, 250 Pa. 179 (1915). The petitioner's counsel frankly admits that, were the devolution of the Frances A. Thomas estate subject to and controlled by the law as the same existed before the passage of the Intestate Act of June 7, 1917, P. L. 429 (to wit, as it was when the decision in Webb's Estate, 250 Pa. 179 (1915), was rendered), Della Elizabeth Thomas, as sole issue of the adopted person, who had died in the lifetime of his adopting mother, the decedent, would here be entitled to inherit and take by devolution the decedent's net intestate estate. Indeed, he could not well take any other position, for that she would be so entitled to inherit has been settled by the decision of the Supreme Court to that effect in Webb's Estate, 250 Pa. 179 (1915). The petitioner's counsel takes the position, however, and argues that such inheritance rights held under the old law to have been vested in the child or issue of the adopted person have been taken away and abrogated by the provisions of the Intestate Act of June 7, 1917, P. L. 429. This point marks the parting of the ways, for we do not agree with the petitioner's counsel that the said Intestate Act of June 7, 1917, P. L. 429, thus narrows, or was designed so to limit, inheritance rights incidental to adoptions, believing that, on the other hand, the lawmakers thereby intended to broaden and further extend inheritance rights and benefits to follow adoptions. Under the Adoption Acts of May 19, 1887, P. L. 125 (under which the adoption in Webb's Estate, 250 Pa. 179 (1915), had been made), and April 22, 1905, P. L. 297 (under which the father of Della Elizabeth Thomas was adopted), it was provided that the adopted person "shall have all the rights of a child and heir of such adopting parent." It should be observed that this language concerns and applies only to the adopted person himself and makes no attempt to prescribe or define any rights, inheritance or otherwise, of the adopting parent or of any other person. It should, furthermore, be observed that the language used is inaccurate and inapt, the word "heir" therein used technically belonging exclusively to real estate, while no words properly applicable to devolution of personalty have been employed. The appreciation of these short-comings and uncertainties of such language of these statutes, no doubt, prompted the lawmakers to discard such phraseology and to employ in lieu thereof, in the pertinent provisions of the Acts of April 22, 1905, P. L. 297, and the Intestate Act of June 7, 1917, P. L. 429, language of apt expression more completely defining and carrying, as has been said, farther reaching inheritance benefits incidental to adoptions.

Counsel for the petitioner contends that the Act of May 19, 1887, P. L. 125, and its supplements, created and reposed in the adopted person a right which has not been correspondingly created and reposed in him by the Intestate Act of June 7, 1917, P. L. 429, to wit, the right in expectancy to inherit the adopting parent's estate, which, upon the adopted person's death in the lifetime of the adopting parent, was held by the Supreme Court in Webb's Estate, 250 Pa. 179 (1915), to pass by operation of law and vest in the adopted person's children or issue. But wherein does there appear any material difference between the language of the said earlier statutes and that of the later act which would warrant such a conclusion? Upon comparing the language of these statutes, we do not discern any such claimed distinction. In the pertinent provisions of the earlier statute the noun "heir" was by the legislature employed, while in the Intestate Act of June 7, 1917, P. L. 429, the lawmakers have seen fit to change the form of the language without changing

Thomas's Estate.

its meaning, employing instead of the noun the verbs "inherit" and "take" (by devolution), supplementing the same by the use of the nouns "next of kin" and "heir." Now, let it be observed that the pertinent language, not only of the older statutes, but also of the present Intestate Act, apply only to the adopted person himself, no attempt being thereby made to include or define, in express language, any inheritance provisions or benefits intended for the children or issue of the adopted person. It seems a self-evident truth that if one is an "heir," he, as such, "inherits;" and, conversely, that if the law qualifies one to "inherit," he must, for that reason, be an "heir." Accordingly, we are unable to discern any essential difference or distinction in the pertinent language of these statutes; the import of such language appearing to us to be identical, no matter whether the noun or verb has been used by the lawmakers. It is, furthermore, to be noted that the Act of May 19, 1887, P. L. 125, gave the adopted person all of the rights of an heir, but (like the Intestate Act of June 7, 1917, P. L. 429) was wholly silent as to the inheritance rights, if any, which the adopted person's children or issue might have or be entitled to in the adopting parent's estate. The Supreme Court, in Webb's Estate, wherein such statute was involved and construed, held that, notwithstanding the complete absence from the said statute then being construed of express language referring to, defining or conferring any inheritance rights incidental to adoptions which should, by virtue of an adoption thereunder, vest in such adopted person's children or issue, held that the children of such adopted person were, nevertheless, under those provisions of said Act of May 19, 1887, P. L. 125, impliedly given such right to inherit from the adoptive grandparent, basing such conclusion upon the ground that such children's parent, to wit, the adopted person, had by such statutory provision under which the adoption had been consummated been made an heir of the said adopting parent. As the language of the Intestate Act of June 7, 1917, P. L. 429 (different in form, but of import identical with the language of the statute involved in Webb's Estate, 250 Pa. 179 (1915), made the father of Della Elizabeth Thomas the heir of Frances A. Thomas, the decedent, we are warranted in following the Webb case as a precedent and adopting the conclusions of the Supreme Court therein reached. The petitioner's counsel criticises the action of this court in recognizing as vested in the children and issue of adopted persons inheritance rights which are not expressly created by statute as an usurpation of legislative functions; but we deem such criticism to be without merit, for, in arriving at such conclusion, we have but followed the precedent established by the Supreme Court in Webb's Estate, 250 Pa. 179 (1915). Moreover, the first sentence of clause *(b)* of section 16 of the Intestate Act of June 7, 1917, P. L. 429, strengthens and fortifies the position we have taken, for it expressly makes such adopted person "a member of the family of the adopting parent" for all purposes of inheritance and taking by devolution. Thus, for all purposes of inheritance and devolution in all estates, without distinction, limitation or restriction, the adopted person is to be considered a member of the family of the adopting parent; the law thus contemplating that such person, when adopted, shall thereupon become, and ever after be, a unit in the family of the adopting parent; so that, whether living or dead, he is to be considered and reckoned in determining the course and shares of inheritance in all estates of all persons whatsoever who may be interested in or affected by the creation of the new relationship. Indeed, the provisions of this first sentence of sub-section *(b)* are intended to affect primarily persons other than the one adopted, for elsewhere in section 16 are prescribed and fully defined the inheritance rights

2 D. & C.

which shall personally accrue to the adopted person as an incident to his new relationship.

In order to meet the suggestion made in our former opinion, to the effect that for this court to hold Della Elizabeth Thomas to be incapable of inheriting from the decedent, her adoptive grandmother, would mean the cutting of her completely off from all inheritance from paternal ancestors, both natural as well as adoptive (a condition which natural fairness and justice would be loath to tolerate), counsel for the petitioner urges that the law does not in fact so inflict such a hardship upon her, maintaining that clause *(b)* of section 16 under consideration preserves to her the right to inherit from her natural paternal ancestors and collaterals, and that nowhere in such section or elsewhere is cut off her right so to inherit from such natural paternal relatives conferred upon her under clause *(a)* of section 7 of the said act. While the provisions of section 16 do not in express language so cut her off from inheriting from her said natural paternal ascendants and collaterals, we are of the opinion that the severing of such natural course of inheritance is thereby indubitably implied. If the conclusions for which the petitioner's counsel contend be recognized and accepted, a most strange and unreasonable situation will be found to result; for, while Della Elizabeth Thomas would thereby be permitted to inherit from her natural paternal ascendants, the latter, under the provisions of clause *(b)*, section 16, would be prohibited from inheriting from her; and, again, while, under clause *(a)*, the adopting parent and her blood relatives are expressly permitted, "through" her father, to inherit from Della Elizabeth Thomas, the latter, as the petitioner's counsel claims, could not inherit from her or them. We are sure that the lawmakers who framed and enacted the Intestate Act of June 7, 1917, P. L. 429, had no reason for creating, and, hence, did not intend that the said statute should create, such a confused and inconsistent system of inheritance to follow adoption, believing that in discharging their legislative functions they contemplated and designed that where an adoption had taken place, the inheritance rights incident thereto should be mutual, orderly and reciprocal. The petitioner's counsel does not deny that had Della Elizabeth Thomas died after her father, but before the death of the said Frances A. Thomas, the latter, if living, or her blood relatives, if dead, would have had the right to have inherited and taken by devolution from said Della Elizabeth Thomas her intestate estate; and we are of the opinion that the provisions of the intestate laws under consideration impliedly give to Della Elizabeth Thomas mutual and reciprocal rights, entitling her, on the other hand, to inherit from her father's adopting mother. Consequently, we conclude that the exception so filed by the petitioner to our former adjudication and decree in this cause should be overruled.

And now, April 27, 1922, this matter came on to be heard upon exception duly filed by J. O. Horning, nephew of the decedent, to the adjudication and decree of this court under date Feb. 6, 1922, dismissing his petition with costs, and such exception was thereupon duly argued by counsel and typewritten briefs submitted; whereupon, upon due consideration thereof, it is ordered, adjudged and decreed that, for the reasons assigned and discussed in the foregoing opinion, the said exception be and the same hereby is overruled, at the cost of the exceptant.

From Harry D. Hamilton, Washington, Pa.