## Minter's Appeal.

*Act of May 6th* 1844, *relative to* "*Lapsed Legacies*," *construed.—Distribution* per stirpes *and* per capita.*—Construction of Will.*

1. Under section 2d of Act 6th May 1844, a bequest by a testator to his sister is valid, though she was dead when the will was written, but left children who survived the testator.

2. Where the testator directed his bequests to be distributed, "share and share alike among the children of my brother Adam, and the children of my brother Martin, and to my sister Barbara," who died before him leaving children; but by another clause in the will, the mode of distribution was rendered doubtful; it was *held*, that the legal statutory form of distribution should be applied, and that the legatees should be classified in three classes, allowing each class to take as their parents would have done, *per stirpes.*

APPEAL from the Orphans' Court of *Adams county.*

This was an appeal by Jacob Minter, for himself and as agent for the children of Martin Minter, who was a brother of Baltzer G. Minter, deceased, and certain other legatees of said Baltzer G. Minter, from the decree of the Orphans' Court on the account of the executors of the last will of said deceased. The material facts of the case are as follows:—Baltzer G. Minter made his last will and testament on the 24th day of March 1855, which was duly proven on the 27th of August 1858, in which there was this provision:—

"Item.—The balance and residue of my estate, I order and direct my executors to divide equally, share and share alike, amongst the children of my brother, Adam Minter, deceased, and the children of my brother, Martin G. Minter, deceased, and to my sister Barbara Saval. It is my will, that said Barbara and the children of said brothers, Adam Minter and Martin G. Minter, shall have the residue of my estate, share and share alike."

On the 27th of August 1858, he died, unmarried and without issue, leaving two children of his brother Adam; fourteen children of his brother Martin, and two children of his sister, Barbara Saval, who had died about eight years before the date of the will. There were others, nephews and nieces, the children of his deceased brothers, Michael and Henry, to one of whom he gave a legacy of $210.

The executors settled an account September 5th 1859, showing a balance in their hands of $2248.96, from which it also appeared that there would be some $3000 or $4000 additional in their hands for distribution. This account was referred to William B. McClellan, Esq., as auditor, whose report was filed February 20th 1860.

The appellants excepted to the confirmation of this report, alleging that the auditor erred,

| | |
|---|---|
| 40 | 111 |
| 150 | 504 |
| 40 | 111 |
| 159 | 349 |
| 159 | 546 |
| 40 | 111 |
| 202 | ¹335 |
| 40 | 111 |
| e 23 SC | ²390 |
| 40 | 111 |
| f 26 SC | ²455 |
| 26 SC | ²457 |
| 40 | 111 |
| f 33 SC | ¹122 |
| 40 | 111 |
| 36 SC | ²214 |
| 40 | 111 |
| f37SC | ¹ 68 |
| e38SC | ²585 |

1. In not distributing the fund equally amongst the children of Adam Minter and Martin G. Minter (who were named in the report), and Barbara Saval, *per capita*.

2. In not distributing the fund amongst the said children of Adam and Martin G. Minter.

The court below, on argument, dismissed the exceptions, and confirmed the report.

The case was then removed into this court, as above stated, where the refusal of the court below to allow the above exceptions, and to distribute the fund between Barbara Saval and the children of Martin G. and Adam Minter, *per capita*, was assigned for error.

*E. B. Buehler*, for appellants, argued that the fund ought to be distributed among the children of Adam and Martin G. Minter, *per capita*, or among them and Barbara Saval's two children, they taking one share with each of the children of the two brothers of the testator, because,

1. As deceased did not die intestate, the rules of the Intestate Law should not be adopted in the distribution, unless the intention of the testator cannot be ascertained, which is not this case.

2. The rule of distribution adopted by the testator, is the rule of law laid down in the text-books : 2 Jarman on Wills, p. 111, Rule 5.

3. The extrinsic circumstances of the case show no other intention.    The children of Adam and Mrs. Saval are well off—those of Martin are poor.    There was no intercourse between the testator and his sister, though they lived but twenty-four miles apart, for she died seven years before the will was written, in which she is named as if still living.    In Fissel's Appeal, 3 Casey 55 ; and Gring's Appeal, 7 Id. 292, there was uncertainty as to the intention, the words "heirs," "children's heirs," or "his heirs or legal representatives" were used.

When the words "heirs," "issues," or "relatives" are used, the rule is to adopt the statute of distribution as the rule both here and in England : 2 Williams on Executors, 2d Am. ed., 807 –811 ; Baskin's Appeal, 3 Barr 304 ; McNeillege *v.* Galbraith, 8 S. & R. 46.    But it furnishes no guide as to the quantum.    In Gross's Estate, 10 Barr 360, the distribution was *per capita*, notwithstanding the words "heirs and assigns."    This case is unlike the cases in Fissel's Appeal and Gring's Appeal.    The word "and" is used in this will, because it was necessary to join the children of the two brothers, after which a third person is brought in, viz., Mrs. Saval, and not her children.    It would be a forced construction of this will to give to that word the effect which was given to it in those cases.    The words "divide equally,

[Minter's Appeal.]

share and share alike, amongst the children," mean *per capita;*
and then the words are reversed, to show that Barbara, and not
her children, is to stand with his brother's children.

Indeed, as there was no one *in esse* to take at the time the
will was made, or at testator's death, her children cannot take
at all. The legacy was void: 4 Kent's Com. 542; Gross's Es-
tate, 10 Barr 361.

*Evans & Mayer,* for appellees.—When, upon the death of a
testator, a legacy becomes of no effect, by reason of the death
of the legatee in his lifetime (unless in the cases provided for by
statute), it matters not whether the legatee died before or after
the date of the will, the intention of the testator is still frus-
trated. Death before, or death after the date of the will, is the
same in effect. The law indeed technically distinguishes between
the cases, holding that, by death before the will, the legacy
becomes void, and by death after the will, the legacy lapses.
But the word "lapse" merely implies that the legacy has slipped
away to another party, as if there were no will, which is equally
true in both cases. Hence the word "lapse" is sometimes used for
both. A statute to remedy the mischief should extend to both,
even if its terms would seem to narrow it to one. Such has been
the ruling in England upon their acts of 7 Will. 4 and 1 Vict. c.
26, § 33: Winter *v.* Winter, 5 Hare 307; Mower *v.* Orr, 7 Id.
473; 2 Williams on Executors 1049–50, edition 1855.

In Pennsylvania we have two statutes on the subject—one in
favour of the issue of the testator's children, and one in favour
of the issue of the brothers and sisters of the testator. Before
the latter was passed, the case of Comfort *v.* Mather came before
this court, reported in 2 W. & S. 450, in which the legatee was
a sister of the testatrix, but had died in the lifetime of the tes-
tatrix, before the execution of the will, leaving issue. The court
held that the legacy "lapsed," because it was not within the act
in favour of lineal descendants, and the legislature had not yet
thought proper to pass any other.

Our Acts of Assembly are broader than the British statute,
and leave no doubt that both cases, of death before and death
after the execution of the will, are included. It expressly em-
braces lapsed legacies and void legacies; and where technical
words are used in a deed or a statute, they are to be understood
in their technical sense: Brocket *v.* Ohio and Pennsylvania Rail-
road Company, 2 Harris 243; Heilman *v.* Bouslaugh, 1 Id. 303.

This distinction is made the basis of the appellants' argument.
We are at liberty therefore to infer, that the words in the statute
of 1810 (supplied by the Act of 1833), and that of 1844, "or
become void," do not mean the same as the words "to lapse."
4 WR.—8

[Minter's Appeal.]

They are not an interpretation, or tautological repetition of the same sense, but are intended to apply to devises and bequests which are technically styled void. These statutes were, therefore, manifestly intended to remedy the mischief of void devises. That of 1844 runs thus: "No devise or legacy hereafter made, shall be deemed or held to lapse or become void." The word "become" is interpreted by lexicographers as meaning "come to be," which is the same as "turn out to be." Its signification is included under the various cognate senses of the Greek verb "gignomai," which signifies "to be born, to be, to become, to be deemed," &c. The language speaks from the date of the statute, and not from the date of the will.

It is argued by the appellants that the Act of 1844 "cannot vivify that which was already dead—cannot render valid that which was void in the beginning." This is begging the question. The legislature intended to vivify the purpose of the testator, and prevent the legacy from becoming void. The mischief is obvious, and can hardly be considered beyond the reach of legislative power.

The authorities cited by the appellants do not support their position. Sloan *v.* Hance, 2 Rawle 28, was before the Act of 1844, is not within the act if it were after its passage, and really turned upon another point. Gross's Estate, 10 Barr 360, refers to the Act of 1844, but only shows that a legacy, contingent as to the person, is not within the act, and therefore a legacy to a class of persons, as to children, embraces those only who are in existence when the legacy vests.

The next point is, whether the legatees take *per stirpes* or *per capita.* · After the decision of this court in Fissel's Appeal, 3 Casey 55, and Gring's Appeal, 7 Casey 292, there seems little ground to question the ruling of the auditor and court below. The idea of the appellants, that a "plain rule of law" is in their favour, for which Jarman on Wills is cited, is without foundation. The leading authority cited by Jarman, is Lincoln *v.* Pelham, 10 Vesey 166; and a careful examination shows that it was decided with some hesitation on the special wording of the will, differing from the one now before this court.

The opinion of the court was delivered, July 24th 1861, by

LOWRIE, C. J.—We cannot doubt that the Act of 6th May 1844, § 2, Pamph. L. 564, saves this bequest to the testator's sister from being void, though she was dead when the will was written, having left children that survived the testator. This interpretation of the law is so just, and presents itself so naturally, that we need waste no words about it. No amount of verbal criticism can make it clearer, but, as is usual in such cases, would only darken and confuse the thought.

[Minter's Appeal.]

Then how shall we interpret the bequests? The testator says "share and share alike among the children of my brother Adam, and the children of my brother Martin, and to my sister Barbara;" and by thus expressing himself, he seems to make three classes, and three equal shares. In another clause, he leaves his thought more doubtful. What then can we do, but resort to the usual distribution of the law for an analogy to help us? When we find a man distributing his estate, in whole or in part, among his next of kin, and he leaves the proportions in which they are to take doubtful, it is quite natural for us to suppose that he had the statutory or customary form of distribution in his mind, and to interpret his will accordingly. This would classify the legatees as he seems to have done, and as the court below did, and allows the three classes to take as their parents would have done: thus they themselves take by a *quasi* representation and *per stirpes.* If he meant that his nephews should be each equal to his sisters, the word *each* would have made his meaning clear. The classification being made in the will is not changed by the death of his sister. Her children take her place.

Decree affirmed, at the costs of the appellants.