## ESTATE OF SAMUEL GREEN, DECEASED.

APPEALS BY THE SOLICITORS' TRUST CO. FROM THE COURT OF COMMON PLEAS AND THE ORPHANS' COURT OF BUCKS COUNTY.

Argued February 9, 1891—Decided February 23, 1891.

(*a*) By his will, dictated at a time when he was seriously ill, a testator gave one half his property to his wife, directing "the other half to be divided equally between Josephine Lukens and the children of John R. Ash; in the event of the death of Josephine Lukens, her portion to go to the children of John R. Ash."

(*b*) Josephine Lukens and the mother of the Ash children had been brought up in the testator's family, and treated by him as if they were his own daughters. The last sentence quoted was added to the will after the testator was informed that Josephine Lukens was also seriously ill, and not likely to recover:

1. On the distribution of the estate of the testator, under said will, Josephine Lukens, who survived him, was entitled absolutely to one half the portion given to her and the children of John R. Ash, and not merely to a life-estate in an equal share thereof with said children.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

Nos. 4, 46 January Term 1891, Sup. Ct.; courts below, numbers and terms not given.

In the Orphans' Court, the account of Elias Carver, administrator with the will annexed of Samuel Green, deceased, showing a balance due the estate of $3,301.20, was referred to *Mr. Hugh B. Eastburn*, as auditor, to report a distribution of said balance. At the same time, in the Court of Common Pleas, the account of Thomas O. Atkinson, agent to sell the real estate of Samuel Green, deceased, showing a balance of $5,181.17,

Statement of Facts.

the proceeds of real estate sold for the parties interested therein, was referred for distribution to the same auditor.

Subsequently, the auditor filed a report in the Orphans' Court, the findings of fact and law of which, adopted by him in his report to the Court of Common Pleas, were as follows:

On February 12, 1888, Samuel Green made his last will and testament providing:

" I leave to my wife Hannah Green one half of my property. The other half to be divided equally between Josephine Lukens and the children of John R. Ash in the event of the death of Josephine Lukens her portion to go to the children of John R. Ash.".

On the evening of the day the will was written, the testator had a severe attack of angina pectoris. His physician, Dr. Swartzlander, wrote the will at his dictation. The will had been completed with the words John R. Ash, when Mrs. Green, the wife of the testator, came into the room, in an excited manner, and stated, in the hearing of all present, that Josephine Lukens was very ill with pneumonia and liable to die at any moment. After this announcement, the scrivener, by direction of the testator, added the last clause: " In the event of the death of Josephine Lukens her portion to go to the children of John R. Ash." Both testator and Miss Lukens recovered. The testator died on April 6, 1888; Miss Lukens still survived.

Josephine Lukens had lived in the family of Mr. Green ever since she was five years of age. Her sister Kate became a member of the family some years afterward, when she also was a little girl, and so remained when she was married to John R. Ash about 1879. She continued to live in the family several years after her marriage, and her eldest son was born there. Mrs. Ash died in July, 1887, leaving four children, William H., Samuel G., Henry D., and John St. Clair Ash. Mr. Green had no children of his own, and though not formally adopting Josephine and Kate, he had always treated them as though they were his own daughters. In the controversy before the auditor, wherein the Solicitors' Loan & Trust Company appeared as the guardian of three of said children, who were minors, the question was, whether Josephine Lukens was entitled to one half the funds, the children of John R. Ash taking among

Auditor's Report.

them the other half, or whether she was to take for life but one fifth of the funds, sharing equally with the said children in the division.

Upon the facts stated, the auditor's report upon this question was as follows:

In determining the first vital question in controversy, in the case, we must decide whether the testator intended to put the Ash children into a class, and to give the class no more than he gave to Miss Lukens. In deciding it, we must follow the rule laid down by Justice TRUNKEY, in Porter's App., 94 Pa. 336, where he says: "The intention of the testator is the prevailing consideration in applying all rules of construction. It is the intention of the testator, expressed in the will, that is to govern, and this is to be judged of exclusively by the words of the instrument as applied to the subject-matter and surrounding circumstances." Applying this rule to the case in hand, the auditor is of the opinion that Miss Lukens is entitled to one half of the fund for distribution, and each of the Ash minors to one eighth, and that the gift to her is an absolute one.

It is fair to presume that the testator used the word " between " in its usual, proper, and ordinary signification.* Worcester gives as one of the definitions of the word, " bearing relation to two; from one to another." In explaining the difference of meaning between the two words, " between " and " among," he says " between is used in reference to two things, parties, or persons; among in reference to a greater number." Webster says that " between " applies properly to only two parties. Applying this well-understood distinction to the direction of the will that the half should be " divided equally between Josephine Lukens and the children of John R. Ash," it is obvious that, in drawing the line, he put on one side of it Miss Lukens, and on the other side he arranged the Ash children as a class. If he had intended each of them to have an equal share with her, he would have used other language, probably directing a division " amongst Josephine Lukens and the children of John R. Ash, each to take an equal share." To adopt the language used in Risk's App., 52 Pa. 269, " had he meant

---

* See Hicks's Est.. 134 Pa. 507.

the children to take per capita, he doubtless would have named them."

If the gift had been to them as individuals and not to the class, and any one of the number had died during the lifetime of the testator, there would have been an intestacy as to the share of the one so dying. But the gift to the class guards against the lapsing of any individual share. The further provision, that in the event of the death of Josephine Lukens, her share should go to the children of John R. Ash, without naming or in any way individuating them, is additional evidence that he intended to treat them as a class, and that, whether at his death it might consist of one or of four members who should take. The danger of intestacy as to any part of his estate was then guarded against, except in the improbable contingency of the death of all the Ash children before his own decease. This construction is in harmony with the fact that Mrs. Ash and Miss Lukens occupied the relation practically to him of daughters, and the Ash children of grandchildren. He gave to his wife the portion which the intestate laws would have given her, and the balance he divided as the intestate laws would have divided it, if the relationship above referred to had actually existed.

—Citing and considering: 2 Jarman on Wills, 756; Dible's Est., 81* Pa. 281; Minter's App., 40 Pa. 111; Osburn's App., 104 Pa. 642; Risk's App., 52 Pa. 269; Young's App., 83 Pa. 63; Fissel's App., 27 Pa. 55; Lockwood's App., 55 Conn. 157; Alden v. Beall, 11 Gill & J. 123; Haskell v. Sargent, 113 Mass. 341; Mickley's App., 92 Pa. 517; Karker's App., 60 Pa. 141; Stevenson v. Fox, 125 Pa. 568; McCormick v. McElligott, 127 Pa. 230; Hicks's Est., 134 Pa. 507, the auditor proceeded:

The correctness of these principles of law is not disputed by counsel, but it is claimed on behalf of the Solicitors' company, guardian, that the facts of the case establish an exception to the rule as above stated, and that the testator meant, not the death of Josephine Lukens in his lifetime, but her death whenever it should occur. The auditor is not able to agree to this view. He does not find that the will was made when the testator was expecting to die, nor that he did not have in contemplation the possibility of Josephine Lukens dying in his life-

Arguments.

time. While Mr. Ash states that in the early period of his attack testator complained that if he continued on in this way he could not live until morning, yet when the doctor came he was in an improved condition, and the doctor says that he was in "comparatively pretty good shape" when the will was written. It is fair to be inferred from the evidence that the testator contemplated the probability of Josephine Lukens dying in his lifetime, and that when the news of her condition was communicated to him he deemed it best to add another clause to his will to guard against this contingency. The will speaks as of the time of his death nearly two months later. There is nothing in the facts and circumstances of this case to satisfy the auditor that there is such "clear evidence" as will warrant setting aside the rule of law in this case.

—The auditor having filed distributions awarding to Josephine Lukens one half the funds and dividing the remainder in equal shares among the minor children of John R. Ash, Mrs. Green, the widow, having received her share, exceptions were filed by the Solicitors' Loan & Trust Co., guardian, alleging that the auditor erred in not awarding to each of the minors one fifth of the funds absolutely, and one fourth of one fifth thereof subject to the life-estate of Josephine Lukens therein. Said exceptions, after argument thereof before the court, were dismissed, without opinion filed, and decrees entered confirming the auditor's reports and directing distribution as recommended. Thereupon the exceptant took these appeals, assigning the dismissal of said exceptions and the confirmation of the auditor's reports, for error.

*Mr. Samuel Wagner* (with him *Mr. Samuel W. Cooper*), for the appellant.

Counsel cited, as to the true rule of interpretation: McCullough v. Fenton, 65 Pa. 424. (1) That Miss Lukens took only a life-estate: Powell on Devises, 763–765; Jessup v. Smuck, 16 Pa. 327; Lippencott v. Warder, 14 S. & R. 115. (2) That the distribution should be per capita, and not per stirpes: 2 Jarman on Wills, 756; Hawkins on Wills, 113; Gest v. Way, 2 Wh. 451; McNeilledge v. Galbraith, 8 S. & R. 43; McNeilledge v. Barclay, 11 S. & R. 103; Bender's App., 3 Gr. 212; Gross's Est., 10 Pa. 362; Dible's Est., 81* Pa. 279:

Risk's App., 52 Pa. 271; Blackler v. Webb, 2 P. Wms. 383; Collins v. Hoxie, 9 Paige 81.

*Mr. Elias Carver* (with him *Mr. Louis H. James*), for the appellee.

Other than authorities cited by the auditor, counsel cited 2 Roper on Leg., *1735; Lachland v. Downing, 11 B. Mon. 32; Walker v. Griffin, 11 Wheat. 375; Baskin's App., 3 Pa. 304; Harris's Est., 74 Pa. 452; Caldwell v. Skilton, 13 Pa. 152; Smith's App., 23 Pa. 9; Fitzwater's App., 94 Pa. 141.

PER CURIAM:

These appeals, although from different decrees, and from different courts, involve the same question, and arise out of the same estate. We are satisfied the learned judge below was right in dismissing the exceptions to the auditor's reports, and confirming the same. The learned auditor has discussed the case so intelligently that we do not think it necessary to add anything to what he has said.

The decree is affirmed in each case, and the appeal dismissed at the costs of the appellants.