Anderson Estate.

Argued January 12, 1953. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY and ARNOLD, JJ.

*Joseph P. Gaffney*, with him *Desmond J. McTighe* and *Duffy, McTighe & McElhone*, for City, trustee.

*Henry W. Maxmin*, with him *Daniel L. Quinlan, Jr., Myron Jacoby, Jacoby & Maxmin, William A. O'Don-*

*nell, Jr.,* and *Rutter, O'Donnell & Mauger,* for executors and trustees.

OPINION BY MR. JUSTICE BELL, March 23, 1953:

These appeals are in effect an appeal from a decree which amended an adjudication and an order for distribution.

William M. Anderson died possessed of an estate which was insufficient to pay his debts and taxes. He also had a life interest with a power of appointment in a Marital Deduction Trust created by his wife. The City of Philadelphia as trustee under the will of Stephen Girard, was a large creditor of Mr. Anderson, its claim arising out of a bond and mortgage executed by the decedent. The City contends that the decedent blended the Marital Deduction Trust with his own individual estate and its claim is payable out of the combined funds. Was there such a blending?

Anderson in the first paragraph of his will directed the payment of his just debts and funeral expenses. In the second paragraph of his will he directed his executors "to divide all the rest, residue and remainder of my Estate . . . , including such property over which I shall be given the power of appointment under the . . . Last Will . . . of my wife . . . into six (6) equal parts, and I give, devise and bequeath one of said equal parts unto each of my following children [naming them] . . . ."

In the interpretation of a will the intention of the testator is the pole star and that intention must be ascertained from a consideration of the entire will and all the surrounding and attendant circumstances: *Newlin Estate,* 367 Pa. 527, 80 A. 2d 819. The question of blending is likewise a question of intention: *Jackson's Estate,* 337 Pa. 561, 564, 12 A. 2d 338. Did the testa-

tor intend to blend his wife's estate with his own and treat the two estates as one for all purposes; or did he intend to blend his wife's estate with his own for certain limited purposes, one of which was for the purpose of distribution to named legatees or upon specific trusts? That is the first important question.

The intention of this testator is clear from the language of his will, i.e., his just debts and funeral expenses are to be paid out of his own individual estate and all the rest, residue and remainder of his estate, together with his wife's estate over which he had a power of appointment, is to be paid to or held for their children in equal shares; in other words, he wanted the mother's estate to go to her children and not to his creditors. Reason and authority likewise support this construction.

"The mere fact that the appointed estate is given to the same persons who take the residue of a testator's individual estate is not the test to be applied in determining whether there has been a blending of the two estates, but the real test under our line of decisions is whether the testator has *treated the two estates as one for all purposes** and manifested an intent to commingle them generally": *Hagen's Estate,* 285 Pa. 326, 331, 132 A. 175.

" 'Under a general power of appointment, the donee and appointor may, . . . make such an exercise of the power as virtually to amount to a gift of the fund to his own estate, thus subjecting it to the payment of the donee's own debts. . . . *But such an intent must be plainly expressed or clearly implied from the appointment:* ' " *Stannert's Estate,* 339 Pa. 439, 442, 15 A. 2d 360. See also *Shipley's Estate, (No. 2),* 337 Pa. 580, 12 A. 2d 347.

---

* Italics throughout, ours.

*Shipley's Estate (No. 2)* is analogous. In *Shipley's Estate* testatrix provided for the payment of inheritance taxes out of her general estate. She then bequeathed 15 pecuniary legacies. Thereafter she divided her residuary estate, *including* her appointive estate, into three equal parts. Her individual or general estate was insufficient (after payment of inheritance taxes) to pay all pecuniary legacies and the legatees naturally claimed that there had been a blending and that they were entitled to be paid their legacies out of the blended estates. The Court rejected their contention and held that a general estate customarily meant "the entire estate held by a person in his individual capacity and did not include property over which he had a power of appointment." The Court then held that the provision "all the rest, residue and remainder of my property and estate, *including* all property and estate over which I may have testamentary power of appointment" meant all her own property which she had not already disposed of, together with the property over which she had a power of appointment.

The only cases where this Court has held that the donee blended the appointed estate with his own for all purposes (including the payment of debts) are (a) those where the testator specifically or by clear implication so states, or (b) where he first blends the appointed estate with his own and thereafter directs the payment of his debts, pecuniary legacies and taxes: Cf. *McCord's Estate,* 276 Pa. 459, 120 A. 413; *Forney's Estate,* 280 Pa. 282, 124 A. 424; *Twitchell's Estate,* 284 Pa. 135, 130 A. 324; *Commonwealth v. Morris,* 287 Pa. 61, 134 A. 429.*

---

* See also, *Jackson's Estate,* 337 Pa. 561, 12 A. 2d 338, where the testator, under the language of that will and the unusual attendant circumstances, manifested a clear intention to blend the two estates for the payment of pecuniary and residuary legacies.

We find that the intention of this testator is clear from the language of his will and also from the authorities, viz., he intended (1) his just debts should be paid out of his individual estate, and (2) all the rest of his individual estate, together with his wife's estate over which he had a power of appointment, should be held for or paid to their children.

The second important question which arises is whether or not under the language of this will and of Pennsylvania's Estate Tax Apportionment Act of August 24, 1951, P. L. 1405, 20 PS 881, the appointed estate, or more accurately "the persons interested in" the appointed estate, must bear their proportionate share of the Federal estate taxes which resulted from the inclusion (for federal estate tax purposes) of the appointed estate in Mr. Anderson's estate.

The Revenue Act of 1926, as amended by the Act of June 28, 1951, treats any property over which the decedent has at the time of his death a general power of appointment (that was created after October 21, 1942) as part of the gross estate of the donee of the power for purposes of the tax.** This is exactly the opposite of the long established law of Pennsylvania: *Com. v. Davis' Estate,* 345 Pa. 284, 26 A. 2d 915; *Stannert's Estate,* 339 Pa., supra; *Valentine's Estate,* 297 Pa. 99, 146 A. 453; *Huddy's Estate,* 236 Pa. 276, 84 A. 909. This conflict naturally has created difficulty and confusion in the determination of tax problems arising under the wills of citizens of Pennsylvania, especially since the executor of a donee's (Anderson's)

---

** "The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property . . . (f) . . . (2) . . . To the extent of any property with respect to which the decedent has at the time of his death a general power of appointment created after October 21, 1942 . . .": 26 U.S.C.A., §§811; 811(f).

estate is required by the Federal Estate Tax Act to pay the entire tax due to the Federal Government, even though the tax is based wholly or in part on an appointed estate which may never come into the possession of the executor.[*] This anomalous situation was attempted to be met and equitably adjusted by Pennsylvania's Estate Tax Apportionment Act of 1951, supra. The Act by its terms applies to any estate for which a Federal Estate Tax return was filed after the Act became effective, viz., on August 24, 1951, regardless of when the decedent died. The Federal Estate Tax return was filed in the instant case on October 16, 1951, so that the said Act is prima facie applicable to this estate.

The pertinent provisions of Pennsylvania's Estate Tax Apportionment Act are as follows:

Sec. 2. "Estate tax, except as provided in subsection (a) of section three, shall be apportioned equitably, as near as may be in accordance with the principles hereinafter stated, among all persons interested in property includible in gross estate . . . and they shall pay the amounts apportioned against them."

Sec. 3. "(a) Powers of Testator or Settlor. A testator, settlor, or possessor of any appropriate power of appointment may direct how the estate tax shall be apportioned or allocated or grant a discretionary power to another so to direct. Any such direction shall take precedence over the provisions of this act insofar as the direction provides for the payment of the estate tax or any part thereof from property, the disposition of which can be controlled by the instrument containing the direction or delegating the power to another . . ."

---

[*] See 31 U.S.C.A. 192, R.S. §3467; 26 U.S.C.A. 822(b), 53 Stat. 127; 26 U.S.C.A. 811(f).

Sec. 4. "(a) Basis of Apportionment. Apportionment of the estate tax, except as provided in section three, shall be made among the persons interested in property includible in gross estate in the proportion that the value of the interest of each such person bears to the value of the net estate before exemption. The values used in determining the amount of tax liability shall be used for this purpose."

Sec. 5. "(c) Court Decrees. The orphans' court, . . . shall make such decrees or orders as it shall deem advisable apportioning the tax . . . ."

Testator after blending (in the second paragraph of his will) the rest of his individual estate with his appointive estate and giving his combined residuary estate equally to his six children absolutely or in trust, provided:

"SEVENTH: I direct that all Estate, Inheritance and Succession Taxes or Taxes in the nature thereof, on the interests passing under this my Will, shall be paid out of the principal of my residuary Estate. I further direct that all such taxes on present or future interests shall be paid at such time as my Executors and Trustees, in their sole opinion, shall deem advisable, whether or not such taxes shall then be due or payable."

In other words, Anderson directed in unambiguous language that estate and inheritance taxes which were payable on the interests passing under his will were to be paid out of the principal of his residuary estate; and he had theretofore specifically said, as above noted, that his residuary estate included the rest of his own estate and his wife's marital trust over which he had a general power of appointment. However, he did not say how the taxes should be apportioned between his individual estate and the appointive estate, and for such apportionment we must look to the Act. It is

clear, under the language of Anderson's will and the Act that the estate taxes must be paid out of the principal of his combined residuary estate and that the beneficiaries of his appointive estate (i.e., each residuary legatee who receives an absolute one-sixth interest and each trust estate which receives a one-sixth interest) must bear (and reimburse the executors of his will for) his or its proportionate share of the estate taxes, namely a one-sixth share.

The amended decree of the Orphans' Court is affirmed; each of the parties to bear its, his or their respective costs.