## Lyle Estate.

Argued April 16, 1953. Before STERN, C. J., STEARNE,
JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

Appeals, Nos. 168 and 169,

*John Russell, Jr.,* with him *Morgan, Lewis &
Bockius,* for appellants.

*Robert W. Sayre,* with him *Frank G. Sayre, Lam-
bert B. Ott* and *Saul, Ewing, Remick & Saul,* for ap-
pellees.

Opinion by Mr. Justice Bell, June 26, 1953:

Mrs. *Martha* Lyle Tinker died, leaving two children, the appellants in this case, and the question is whether under the will of Martha's brother these appellants took the income which Martha had been receiving and which was *not otherwise disposed of* in testator's will, or whether such income went to the surviving life tenants who are the appellees. Appellants and appellees are the nieces and nephews of the testator.

Franklin L. Lyle died February 14, 1915, leaving a will dated June 20, 1910, and several codicils. He left surviving him a sister, Jennie, who subsequently died without issue; a brother, William, who subsequently died without issue; a sister, Mary, who subsequently died, leaving a daughter and son, the present appellees; and a sister, Martha, who subsequently died leaving two children, the present appellants.

Testator in the residuary clause of his will provided for a distribution of income and incidentally of principal, as follows:

"H. Upon the death of all said life tenants I direct that the principal of my estate not otherwise disposed of shall be divided among the persons and for the estates they would have been entitled to if I had survived the survivor of said life tenants and died intestate, and until the time for final distribution of my estate, as herein directed, has arrived, I direct that all income arising upon any and all parts of my estate and *not otherwise disposed of by this my will* * shall be divided among the persons, in the proportions, and for the periods hereinbefore mentioned in Clause G. concerning the income referred to in said Clause." In order to interpret the testator's intent as set forth in

---

* Italics, throughout, ours.

Clause H., we must refer to Clause G. which reads as follows:

"G. Upon the death *without* leaving children or other descendants to survive him or her, of any person who under this will is entitled to receive any income during his or her entire life, I direct that the *surviving life tenants* or life tenant shall be paid the income which such *deceased life tenant* was receiving at the time of his or her death, said payment of said income to said surviving life tenants or life tenant to be for their respective lives and to be made to them in the proportions hereinbefore stated in Clauses A. C. D. and E."

Clauses H. and G. must be read together, and so read they are ambiguous. Appellants claim that under Clause G. which provides for a gift of income to surviving life tenants upon the death of any person receiving income under the will, *without* leaving children to survive him or her, an implied gift is created for them under *Rouse Estate,* 369 Pa. 568, 87 A. 2d 281 and *Cope Estate,* 353 Pa. 306, 45 A. 2d 52; or that if no such implied gift is made, then an intestacy as to this income results.

The appellees contend that the gift in Clause H. of all income not otherwise disposed of means not otherwise *expressly* disposed of, and since the income on Martha's death was not expressly disposed of, it went to them and the survivor of them as surviving life tenants as provided in Clause G.*

Before considering the language of the will and the applicable authorities, we shall first dispose of the

---

* This will furnishes a typical example of the ambiguity or confusion that frequently results when a scrivener of a will attempts to express a testator's intention by a short cut instead of setting forth at length (even at the cost of repetition) exactly what the testator wishes upon the happening of a particular event.

"intestacy contention" which appellants did not make in the Court below. It is clear that testator did not intend to die intestate as to any income, but unquestionably intended his undisposed of income to be paid to the persons in the proportions and for the periods mentioned in Clause G. of his will. Moreover, there is a strong presumption that a testator intends to dispose of his entire estate and not die intestate as to any part of it: *Carmany Estate,* 357 Pa. 296, 53 A. 2d 731; *Renner Estate,* 358 Pa. 409, 57 A. 2d 836; *Siple v. Greumelli,* 357 Pa. 237, 53 A. 2d 607; *Duffy's Estate,* 313 Pa. 101, 169 A. 142. For these reasons we find no merit in the contention that there was an intestacy with respect to this income.

"In the interpretation of a will the intention of the testator is the pole star and that intention must be ascertained from a consideration of the *entire will* and all the surrounding and attendant circumstances: Newlin Estate, 367 Pa. 527, 80 A. 2d 819": *Anderson Estate,* 373 Pa. 294, 296, 95 A. 2d 674.

The weakness of appellants' case is that they depend solely upon Clauses H. and G. and disregard the other provisions of the will. The language from the opinion in *Britt Estate,* 369 Pa. 450, 456, 87 A. 2d 243, is particularly apt: "However, this clause cannot be disassociated from the rest of the language . . . of the will . . . or from the general scheme of the entire will."

Although Clauses H. and G., considered alone, are ambiguous, we agree with the Court below that the testator intended all his income which was not otherwise *expressly* disposed of by his will to be paid to the surviving life tenants and the survivor of them for life in the proportions stated in Clauses A. C. D. and E. Our interpretation and conclusion is fortified by the scheme of the will and particularly by Clause F. which we shall hereinafter more fully discuss.

Testator had, we repeat, three sisters and a brother. In Clause A. he gave his sister Martha ¼th of the income for life and upon her death the income to her surviving children (the present appellants) until the youngest reached the age of 35 years. These children were not life tenants and the testator clearly intended that when the youngest of the present appellants reached, as she did, 35 years of age, the income from this ¼ share should cease.

In Clause B. testator gave 1/6th of the income to Martha's children, the present appellants, each of whom, upon reaching the age of 30, was to receive 1/3rd of the principal from which he or she derived the income and when Franklin Tinker reached 35 years of age he was to receive the balance of the principal of this 1/6th share. Furthermore, testator provided in Clause E. that 1/12th of the income was to be paid in equal shares to his sisters, Martha and Jennie, and his brother, William, for their respective lives, and the life of the survivor. Under this clause Martha received initially 1/36th of the income, and eventually 1/12th of the income. It is obvious, therefore, that Martha and her children received under the testator's will in effect 1/4th of the income, plus 1/6th of the income, and eventually 1/6th of the principal, plus 1/36th, or eventually 1/12th, additional income. ·

In Clause C. testator gave 1/6th of the income to his sister, Jennie, and 1/6th of the income to his brother, William, for their respective lives.

In Clause D. testator gave, as modified by his codicil of January 6, 1914, 1/12th of the income to his sister, Mary, and 1/12th to Mary's children, the present appellees, during their lives and the life of the survivor.

· . We then come to the very important Clause F. in which the testator provided that upon the death of his sister Jennie, and his brother William, and his sister

Mary, and upon the death of Mary's children, Mary and Franklin, leaving surviving descendants "the income which the one so dying had been receiving shall be paid to his or her surviving children or other descendants, per stirpes, . . ." The omission of testator's sister Martha and her children from this Clause F. in which income was bequeathed by testator to the surviving descendants of his other sisters and his brother and the present appellees, is very significant. Martha and her children were not omitted by mistake, as is evident from the fact that Franklin was added by the codicil of January 6, 1914. The reason why the testator did not intend the present appellants to inherit their mother's share of the income which the testator had not expressly disposed of is, we believe, obvious,—the testator had already given Martha and her children considerably more of his estate than he had given to any of his other sisters or brother or their descendants.

It is clear, therefore, from a consideration of testator's entire will—from its language as well as from his scheme of distribution: *Brumbach Estate,* 373 Pa. 302, 95 A. 2d 514—that he intended in Clauses H. and G. to give all his income *not otherwise expressly disposed of* by his will to his surviving life tenants* and the survivor of them, namely Mary Hartley and Franklin Boettger, the present appellees.

The decree of the Orphans' Court is affirmed at appellants' cost.

---

* We note that Judge Gest of the Orphans' Court of Philadelphia County arrived at the same interpretation and conclusion in a prior adjudication which arose upon the death of testator's sister Jennie.