## Richley Estate.

Argued September 29, 1958. Before JONES, C. J., BELL, MUSMANNO, JONES and COHEN, JJ.

*Nevin Stetler,* with him *Leo E. Gribbin, Jr.,* for appellants.

*E. Eugene Shelley* and *Horace G. Ports,* with them *Robert C. Fluhrer,* and *Frederick B. Gerber,* for appellee.

*Henry B. Leader* and *Stock and Leader,* for Paul C. Richley, appellee.

*Robert H. Griffith, Edward H. H. Garber,* and *Markowitz & Kagen,* for Benjamin Eby, Jr., appellee.

OPINION BY MR. JUSTICE BELL, November 25, 1958:

John William Richley died, unmarried, on November 24, 1955, leaving a "home-drawn" will which was duly probated. Two questions are presented by this appeal: (1) Did decedent in his lifetime give to John Snyder, his grandson, premises 635 E. Chestnut Street, York, Pennsylvania? The lower Court held that there was not a valid inter vivos gift of this property, and that it passed as part of the residuary estate.

On or about September 1, 1953, Horace G. Ports, a member of the York County Bar, prepared, at decedent's request, a deed for the premises in question to Snyder. The consideration recited was $1.00. Decedent executed the deed which was duly witnessed and acknowledged, but never recorded. The decedent continued to occupy this property as his residence until his death on November 24, 1955. During all this time he exercised all the incidents of ownership, paid all taxes thereon, all utility costs, all fire insurance and all maintenance and repairs.

Decedent's executor found in a large check book in a case of drawers in decedent's bedroom, where Mr. Ports testified decedent had placed the deed immediately after its execution, the unrecorded deed to Snyder

for the above mentioned premises. The deed was mutilated, the signature of the decedent was cut out therefrom and the word "void" was written with ink under the place where the signature had originally appeared. The signatures of both subscribing witnesses were partially obliterated and scratched out by the use of pen and ink. Under these facts the burden of proving an inter vivos gift by a valid delivery of the deed was upon the claimant and this burden can be satisfied only by clear and satisfactory evidence: *Martella Estate*, 390 Pa. 255, 135 A. 2d 372; *Brightbill v. Boeshore*, 385 Pa. 69, 122 A. 2d 38; *Grossman Estate*, 386 Pa. 647, 126 A. 2d 468; *Snyderwine v. McGrath*, 343 Pa. 245, 22 A. 2d 644.

Snyder contends that decedent had delivered this deed to him in his lifetime, but it had been returned to decedent by Snyder for safekeeping or for some other undisclosed reason. Charles Kramig and his wife, former tenants of the decedent and friends of Snyder, testified that they visited Snyder's home sometime in September, 1953, and saw the deed in Snyder's possession. Ruby E. Hershey, the decedent's practical nurse in September, 1953, testified that on the night of September 7th or 8th or 9th or 10th, the decedent told her he had given this property to Snyder and that Snyder next morning showed her a folded paper or document which she did not examine, and could not identify. On September 10th or 11th, Miss Hershey, at decedent's request, gave decedent a pair of scissors to cut his name off the deed. She further admitted that after decedent had cut his name off the deed, the deed was taken by her and placed in the decedent's check book.

On the other hand, Paul C. Richley, a son of the decedent and an uncle of Snyder, testified that on September 17th Snyder told him that the decedent gave

him a "going over" and wouldn't give him the deed because Snyder's wife was so "extravagant". A similar conversation was testified to by William Richley. Snyder denied this testimony.

Mr. Ports, the scrivener, testified that several weeks after the date of the deed, Snyder came to him and asked him if he would intercede for him and try to persuade the decedent to give him the deed for the property. Several weeks later Snyder again came to Ports with the same request. Ports further testified that 2½ months after the deed was written, he asked Snyder whether he should try again to get the decedent to deliver the deed to Snyder and his reply was "It is no use now, because [the decedent] has cut the signature off of the deed." Snyder had frequent access to decedent's house and bedroom for conferences with decedent.

Bessie Ray Richley, a daughter of the decedent, testified that on August 18, 1954, when she and Snyder were in the home of her father, the decedent said to Snyder "I never gave you the deed to this house, so I will give you this check as a down payment on another one." Snyder admitted receiving this check, but denied that decedent said "I never gave you the deed to this house".

The lower Court correctly concluded that the claimant, Snyder, failed to sustain the burden of proving by clear and satisfactory evidence a valid inter vivos gift.

The second question involves a more difficult problem. Richley drew a will which, to say the least, was ambiguous. On page 2, in an unnumbered paragraph, he provided as follows:

"In making the above division of articles (see above), I shall expect my Executor to consult with adult legatees, but the final division shall be settled and determined by my Executor.

"This document or sketch with its drawings and figures represents my last will and testament; as to how I want all of my earthly possessions divided amongst my legal heirs and others to cause no disputes or fighting about said divisions.

J. W. Richley

Benj. Eby, Jr., is out—the only heir of my daughter Ruth. One of these shares —his share—to go to Benj. Eby's divorced wife and two small girls. Paul, my son, out of this division— his share in trust. He just got 3M+4M or $7000.

Two grandchildren OUT William B. Richley's and Ruth Wolfe's shares to go to their children, my great grandchildren. May create a trust for these two.

All legal taxes to be paid first.

J. W. Richley

This circle represents 100% or all of J. W. Richley's assets; cash, stocks and bonds, all properties, land, real estate, etc., everything he has and all personal belongings.

These %'s and divisions represent how much each of the four parties shall be entitled to."

This conflicted with specific and general legacies which he made in prior and in subsequent "items" in his Will, as well as with his residuary estate in which he set up a detailed trust containing life estates and directions as to the distribution of corpus, as well as a number of customary trust provisions.

The interpretation of home-drawn wills is often difficult and this is certainly no exception.

In *Weaver Estate,* 390 Pa. 128, 134 A. 2d 675, the Court said (page 131) : "Before analyzing Weaver's will it is well to state the clearly settled rules or canons of construction which are pertinent. In McFadden Estate, 381 Pa. 464, 112 A. 2d 148, the Court, quoting from Lifter Estate, 377 Pa. 227, 231, 103 A. 2d 670, said (page 467) : ' "The intention of the testator is the pole star in the interpretation of every will and that intention must be ascertained from a consideration of the entire will, including its scheme of distribution as well as its language, together with all the surrounding and attendant circumstances: Lyle Estate, 374 Pa. 344, 97 A. 2d 830; Brumbach Estate, 373 Pa. 302, 95 A. 2d 514; Newlin Estate, 367 Pa. 527, 80 A. 2d 819; Anderson Estate, 373 Pa. 294, 95 A. 2d 674." ' See also: Britt Estate, 369 Pa. 450, 454, 455, 87 A. 2d 243; Sowers Estate, 383 Pa. 566, 570, 119 A. 2d 60; Conlin Estate, 388 Pa. 483, 131 A. 2d 117."

From a reading of the entire will we believe that the intention of the testator was to give his residuary estate as he specifically and in detail set forth in his residuary trust paragraphs and not in the sketch which is set forth on page 2 of his Will.

In *Bald Estate,* 385 Pa. 176, 122 A. 2d 294, the Court said (page 181) : "In Dunlap Estate, 381 Pa. 328, 331, 112 A. 2d 349, the Court said: 'The pole star which the Courts seek to ascertain in every will is the testator's intent . . . . "When the intention of the tes-

tator can be ascertained by an examination of his entire will . . . 'technical rules or canons of construction are unnecessary . . .' ": Edmunds Estate, 374 Pa. 26, 97 A. 2d 75'.

" ' " '. . . it is only where the intent is uncertain or the language ambiguous that such canons should be resorted to: Haydon's Estate, 334 Pa. 403, 6 A. 2d 581; Snyder Estate, 359 Pa. 138, 58 A. 2d 178; Walker's Estate, 344 Pa. 576, 26 A. 2d 456': Britt Estate, 369 Pa. 450, 455, 87 A. 2d 243." ': McFadden Estate, 381 Pa. 464, 112 A. 2d 148."

If we resort to and consider the pertinent canons or rules of construction, we would likewise conclude that the specific residuary trust paragraphs carry out his actual and final intent since, under the canons, if two paragraphs are conflicting and cannot be construed together, the latter prevails: *Fisher Will,* 355 Pa. 105, 106, 49 A. 2d 376; *Conner's Estate,* 302 Pa. 534, 537, 153 A. 730; *Buechley's Estate,* 283 Pa. 107, 128 A. 730.

Decree affirmed; each party to pay his respective costs.