## Wanamaker Estate.

Argued January 5, 1960.  Before JONES, C. J., BELL, MUSMANNO, JONES, COHEN, BOK and EAGEN, JJ.

*John G. Williams,* with him *John E. Walsh, Henry S. Drinker,* and *Drinker, Biddle & Reath,* for appellant.

*H. Ober Hess,* with him *Bruce L. Castor, William S. Rawls,* and *Ballard, Spahr, Andrews & Ingersoll,* for appellee.

OPINION BY MR. JUSTICE BELL, March 16, 1960:

Rodman Wanamaker died on March 9, 1928, leaving a will dated October 6, 1923, and three codicils.* Mr. Wanamaker was survived by 3 children and 5 grandchildren, all of whom were living at the time his will was executed:

| Children | Grandchildren |
| --- | --- |
| John Wanamaker, Jr. | (John R. Wanamaker<br>(Fernanda Leas |
| Marie Louise Kent | (Gurnee Munn, Jr.<br>(Fernanda Munn Kellogg |
| Fernanda W. Munn | (Rodman A. Heeren |

---

* The will was lengthy and covered 22 printed pages. The first and third codicils were short, but the second codicil covered 8 printed pages.

All of Mr. Wanamaker's children are now deceased, but all of his 5 grandchildren are still living and no additional grandchildren were born.* Testator's will established three trusts (1) an Insurance Trust of over $4,000,000 in the Second paragraph of his will; (2) a very large Stock Trust in the Third paragraph of his will; and (3) a Residuary Trust in the Twenty-second paragraph of his will. This appeal involves solely the proper distribution of the principal of the Insurance Trust.

The relevant provisions of the Second paragraph of Mr. Wanamaker's will are:

"SECOND. . . . I hereby order and direct that all principal sum of insurance moneys, with any dividends, or income due thereon, shall be paid over to Fidelity Trust Company, Philadelphia, In Trust, to be held as follows:

"In trust to hold the same for the benefit of my three (3) children, in equal shares, for and during their natural life, and their heirs, until the youngest shall attain the age of twenty-one (21) years, in accordance with the following terms and conditions.

"To . . . pay the annual *income,*** derived therefrom, in equal quarterly payments *to each of my said children,* [upon a spendthrift trust] . . . . *In the event of the death of any one,* or all, of my said children, leaving issue, then such *issue* to *receive the share his,* her or their *parent* would have received had he, she or they then been living. *In further Trust to hold said principal* sum for the child or children of my deceased child or children *until the youngest child, of any of my child, or children,* shall reach the age of twenty-one (21) years. Such income to be paid them during that period in accordance with the same terms and conditions

---

* There are 14 great-grandchildren all of whom are living.
** Italics throughout, ours.

under which the parent, or parents enjoyed the same during their lifetime.

"In Trust, *upon the youngest of my grandchildren reaching the age of twenty-one (21) years* then to pay over the *principal* of said sum, with any accumulated income thereon, *to and among the heirs of my children, then living, in equal shares.*

"In further Trust to pay over said principal insurance fund, with any accrued income thereon, in the event of all of my children dying without issue to my Residuary Estate."

In his Second Codicil, dated August 5, 1927, Mr. Wanamaker provided:

". . . FIRST. Under the second paragraph, of the Will, I have stated certain insurance moneys shall be held 'In Trust to hold the same for the benefit of my three (3) children, in equal shares, for and during their natural life, and their heirs, until the youngest shall attain the age of twenty-one (21) years, in accordance with the following terms and conditions'.

"By that expression I mean such Trusts shall exist only until the *youngest heir* of my said children, shall attain the age of twenty-one (21) years. I think the fact is clearly stated, later on, in the same paragraph, towards the end thereof, but I refer to it here now in order there may be no misunderstanding as to exactly what my directions are in connection with it."

Fernanda W. Munn, testator's last surviving child, died September 24, 1958, and since all 5 *grandchildren* of testator had attained the age of 21 years, the principal became distributable "to and among the *heirs* of my children, then living, in equal shares."

Rodman A. Heeren, the only child of (testator's child) Fernanda W. Munn, claims that the principal of the Insurance Trust should be divided *per stirpes* among testator's 5 grandchildren, since they were to

278

take *as heirs* of his children. Fernanda W. Leas, one of the two children of (testator's child) John Wanamaker, Jr., claims that the will directed a *per capita* distribution of principal among testator's 5 grandchildren, i.e., one-fifth of the principal to each grandchild living when the youngest of testator's grandchildren reached the age of 21 years, although she and all the other parties agree that great-grandchildren would have taken per stirpes. John R. Wanamaker, who is the son of John Wanamaker, Jr., and the brother of Mrs. Leas, took the position that there should be a *per stirpes* distribution among testator's 5 grandchildren, although he would thereby receive a smaller share than under a per capita distribution (1/6th instead of 1/5th).

Judge TAXIS, the auditing Judge, directed a *per capita* distribution of principal. Rodman A. Heeren appealed.

A number of provisions of Mr. Wanamaker's will (a) were ambiguous, and others (b) would have violated the Rule against Perpetuities if shortly after his death his executors and his trustees and his 3 children, aided by eminent Philadelphia lawyers, had not entered into a written agreement dated June 11, 1928,* which interpreted the will in a manner which made its provisions lawful, and in accordance with what they believed was Mr. Wanamaker's intention.

With respect to the Insurance Trust, the aforesaid family agreement dated June 11, 1928, provided that on termination of the trust, "the principal of said trust shall be distributed to and among the descendants then

---

* The same parties, plus a guardian ad litem for all of testator's grandchildren, entered into a written agreement dated January 26, 1931, to pay certain taxes and annuities out of the Wanamaker Store Stock Trust, but this agreement recited it was not intended to affect or alter the agreement dated June 11, 1928.

living of Rodman Wanamaker in equal shares, *per stirpes,* under the principle of representation. . . . Each of the parties . . . for themselves, their respective heirs, executors and administrators, ratify and confirm all of the provisions of the Will of Rodman Wanamaker . . . as hereby agreed to be construed and interpreted."

All parties agree (1) that the testator (after a gift of the income to each of his three children for their respective lives) provided for a *per stirpes* distribution of income to his grandchildren, and (2) that Mr. Wanamaker's three children believed and agreed (for themselves and their respective heirs) that the principal of the Insurance Trust should be distributed at the termination of the trust *per stirpes* and not per capita among testator's *grandchildren.* The auditing Judge, however, correctly stated that the present parties in interest, namely, testator's grandchildren, being minors in 1928 and not being parties (through a guardian or trustee ad litem) to that agreement, were not and could not be bound thereby.

In *Richley Estate,* 394 Pa. 188, 193, 146 A. 2d 281, the Court said (page 193) : " '. . . in McFadden Estate, 381 Pa. 464, 112 A. 2d 148, the Court, quoting from Lifter Estate, 377 Pa. 227, 231, 103 A. 2d 670, said (page 467) : " 'The intention of the testator is the pole star in the interpretation of every will and that intention must be ascertained from a consideration of the entire will, including its scheme of distribution as well as its language, together with all the surrounding and attendant circumstances: Lyle Estate, 374 Pa. 344, 97 A. 2d 830; Brumbach Estate, 373 Pa. 302, 95 A. 2d 514; Newlin Estate, 367 Pa. 527, 80 A. 2d 819; Anderson Estate, 373 Pa. 294, 95 A. 2d 674.' " See also: Britt Estate, 369 Pa. 450, 454, 455, 87 A. 2d 243; Sowers Estate, 383 Pa. 566, 570, 119 A. 2d 60; Conlin Estate, 388 Pa. 483, 131 A. 2d 117.' "

Few wills have a twin brother: *Newlin Estate,* 367 Pa. 527, 536, 80 A. 2d 819; and we agree with all the parties that this will is sui generis.

In searching for testator's intent, we note that in disposing of the insurance trust he directed the insurance money to be held "in trust for the benefit of my three children in equal shares for their natural life and their heirs until the youngest [heir of my children] shall attain the age of twenty-one (21) years, . . . ." He then directed a *per stirpes* distribution of *income* among grandchildren "until the youngest child, of any of my child, or children, shall reach the age of twenty-one (21) years." Testator then directed his trustees "to pay over the principal . . . to and among the heirs of my children, then living, in equal shares."

Appellant contends that a "payment of principal to the *heirs* of my children . . ." indicates a per stirpes distribution of principal,* since heirs usually indicate a per stirpes as distinguished from a per capita distribution. Appellee, on the other hand, contends that the words "in equal shares" usually indicate a per capita distribution** and restrict the words "heirs of my children"; and consequently clearly indicate that testator intended a per capita distribution of principal to his grandchildren, otherwise it would not be "in equal shares". Appellee argues that this is the correct interpretation even though she concedes that great-grandchildren would take per stirpes, in spite of the words "in equal shares."

---

* *Ashburner's Estate,* 159 Pa. 545, 28 A. 361; *Osburn's Appeal,* 104 Pa. 637; *Webb's Estate,* 250 Pa. 179, 95 A. 419.

** Cf. *Love Estate,* 362 Pa. 105, 66 A. 2d 238; *Davis's Estate,* 319 Pa. 215, 179 A. 73; *Garnier v. Garnier,* 265 Pa. 175, 108 A. 595; *Duckett's Estate,* 214 Pa. 362, 63 A. 830; *Rosengarten Estate,* 349 Pa. 32, 36 A. 2d 310; *Joyce's Estate,* 273 Pa. 404, 117 A. 90; *Campbell Estate,* 395 Pa. 395, 150 A. 2d 333.

It is unusual for a testator to intend and direct a per stirpes distribution of income among a specified class, to-wit grandchildren, and a per capita distribution of principal among the same class, to-wit grandchildren, with the result that certain grandchildren would receive a per stirpes share of income on Tuesday, but on Wednesday (the next day when the youngest heir or grandchild reached 21 years of age) would receive a per capita share of principal. If that was the testator's intent, it should be clearly expressed, as it was in the other trusts. Each party points out in support of his argument that the testator in his large (Store) Stock Trust, as well as in his Residuary Trust, directs, *at the time fixed for distribution of principal, a per capita distribution of principal* among great-grandchildren following a per stirpes distribution of income. However, in the Stock Trust and in the Residuary Trust the language of the gift of principal at the termination of each of said trusts was entirely different from the language in the Insurance Trust.

For example, in the Stock Trust, testator gave the capital stock of the Store or the proceeds thereof in trust "In the event of the decease of one of my said children then *the income* to which said deceased parent would have been entitled, had they lived, shall then be *divided into two* parts. One (1) share thereof shall be equally *divided among the children, then living,* of such deceased child, so that said children, or in the event of there being but one child surviving, my said deceased child, shall enjoy to the extent of one-half (½) the share his, her or their parent would have received had they continued to live. That this provision of descent shall apply to all of my children, and, in the event of all of said three (3) children dying, then the share to which each of said child, or children, was respectively entitled, during their lifetime, to the one-half (½) extent, above provided for, shall go to and be enjoyed by

the children, then living, of such deceased child or children."

. . .

". . . In further Trust, at the expiration of the period of twenty-one (21) years, after the date of the decease of the last surviving grandchild, of my children, *then said stock,* or the proceeds which may be derived therefrom, *to be equally divided, share and share alike, into as many parts as there may then be great-grandchildren of mine, surviving, and the descendant of any great-grandchild, then surviving,* the latter to receive and enjoy, . . . *such share as their parent,* or parents, *would have enjoyed, had they then not been deceased."*

In other words, testator, *clearly* gave the principal of his Stock Trust at the termination of the trust to his then surviving *great-grandchildren per capita* (and the then living descendants of a deceased great-grandchild per stirpes). Testator made a similar gift of the principal of his Residuary Trust at the termination of the trust to his *great-grandchildren per capita,* i.e., "upon the arrival at the age of twenty-one (21) years of the youngest of my *great-grandchildren,* such Estate to go to them share and share alike, their and each of their heirs and legal representative." The language employed by testator in his *gifts of principal* in the Stock Trust and in the Residuary Trust is so different from that in the Insurance Trust that it indicates an intent to make a different distribution of principal among his first takers of principal in the Insurance Trust than in either the Stock Trust or in the Residuary Trust.

Each party submitted a brief containing several prior decisions which each believed sustained their interpretation, although each admitted there was no case directly in point. Probably the case nearest in point is *Ashburner's Estate,* 159 Pa. 545, 28 A. 361. In that case testator bequeathed his estate to his "daughters

Harriet E. A. Tucker and Maria B. Osborne, and *the children and heirs* of my sons Benjamin and Charles B. Ashburner, to be *divided equally* between them." At the date of testator's will his sons Benjamin and Charles were dead. The Court held that distribution should be made per stirpes among the children of Benjamin and Charles. In the learned opinion which was adopted by this Court, Judge PENROSE, who is generally regarded as the ablest Judge in Orphans' Court matters in the history of the Commonwealth, said: " '. . . "heirs," ex vi termini, implies representation; and in this respect its meaning is not changed by being coupled with the word children. . . .' "

. . .

" 'The effect is not altered by the direction to divide "equally between them," since these words are no less appropriate to a division among classes than to division among individuals: Risk's Appeal, 52 Pa. 273; Minter's Appeal, 40 Pa. 111; Green's Estate, 140 Pa. 253.' "

However, we agree with the auditing Judge that this will is sui generis, and that no prior decision of this Court governs it. It is therefore unnecessary to analyze or review the authorities cited by appellant or by appellee. Considering the entire will in the light of the circumstances surrounding testator when he made it, it will suffice to say that we believe Mr. Wanamaker intended the principal of his Insurance Trust to be paid to his grandchildren (living at the time fixed for distribution) *per stirpes* and not per capita.

Decree reversed; the parties to pay their respective costs.

---

DISSENTING OPINION BY MR. JUSTICE BOK:

I think that the Majority has allowed the case to become needlessly involved. There are three trusts, and we are concerned with only one of them. Had tes-

tator not intended three distinct schemes by which to distribute his property he would have made only one. Since he made three, I feel it an open invitation to decide each separately and according to its own language.

In Paragraph Second, B. & C., the insurance trust is to be held for the benefit of the testator's three children in equal shares for life, and of their heirs, until the youngest shall have reached twenty-one.

This is precisely what has happened: all three children are dead and all five grandchildren are twenty-one. There are no others and it is time to distribute.

In this state of affairs, K disposes of the corpus with complete clarity: "upon the youngest of my grandchildren reaching the age of twenty-one years then to pay over the principal of said sum . . . to and among the heirs of my children, then living, in equal shares." The phrase "heirs of my children" is a catch-all, including heir (C), issue (H), child (I), grandchild (K), and children dying without issue (L).

I think it clear, therefore, that testator meant to create a single class and not a multi-class group. And I see nothing unusual in giving income per stirpes to children and principal per capita to the succeeding generation. See *Duckett's Estate,* 214 Pa. 362 (1906), 63 A. 830; *Rosengarten Estate,* 349 Pa. 32 (1944), 36 A. 2d 310; *Love Estate,* 362 Pa. 105 (1949) 66 A. 2d 238; *Davis's Estate,* 319 Pa. 215 (1935) 179 A. 73.

I think that distribution of this trust should be made per capita, since there is a group of people all of one class waiting for the elevator on the same level; *Campbell Estate,* 395 Pa. 395 (1959) 150 A. 2d 333.

Hence I dissent.

Mr. Justice EAGEN joins in this dissent.