Weaver Estate.

Argued April 23, 1957. Before BELL, CHIDSEY, MUS-
MANNO, ARNOLD, JONES and COHEN, JJ.

*James J. Convery*, with him *LaBrum & Doak*, for
appellant.

*William H. S. Wells*, appellant, in propria persona,
with him *Gerald K. Burns* and *Saul, Ewing, Remick &
Saul*.

*Thomas Raeburn White*, with him *LeRoy E. Perper*,
*Aaron S. Swartz, Jr., Ira Jewell Williams, Jr.* and *Ira
Jewell Williams*, for appellees.

*John B. Hannum, 3rd*, with him *T. F. Edwards* and
*Pepper, Bodine, Frick, Scheetz & Hamilton*, for appel-
lees.

*Robert W. Honeyman*, appellee, in propria persona,
with him *Desmond J. McTighe* and *John Russell, Jr.*

130

OPINION BY MR. JUSTICE BELL, September 30, 1957:
John H. Weaver died April 26, 1934, leaving a will
dated January 12, 1934. He left surviving him a wid-
ow, who died March 26, 1935; a daughter, Phoebe
Weaver Macklin, who died April 21, 1936, and her hus-
band, John F. Macklin, who died October 10, 1949, and
two Macklin children, John H. Weaver Macklin and
Ida Weaver Macklin Lilley Wark. He also left sur-
viving him the following grandchildren, who were the
children of his deceased daughter, Marian Weaver
Downes (Kampmann): Robert S. Kampmann, Jr.,
Elizabeth Kampmann Brown, and Marion Weaver
(Kampmann) Horner. All of the above mentioned
grandchildren are still living except Ida Macklin Wark
(Phoebe Macklin's daughter) who died March 25, 1953,
survived by four minor children, William Lilley, 3rd,
Phoebe Anne Lilley, John Weaver Lilley and Victoria
Lilley.

The Third Account and Supplemental thereto of the
Trustee of the Estate of John H. Weaver, Deceased,
was filed because of the death of Ida Macklin Wark
and the necessary (partial) distribution of principal
which the testator provided should be made upon her
death. The balance of principal shown by the Account
amounted to over $6,153,000. The important question
involved is: Did the lower Court correctly charge
against the *entire* residuary trust principal, certain
withdrawals of principal amounting to $100,000 by two
Kampmann grandchildren?

Mr. Weaver's will is, in some respects, unusual,—
because of (a) the preference he showed for his daugh-
ter, Phoebe Weaver Macklin, and her husband and her
descendants, and (b) the antagonism he showed for
Robert S. Kampmann, husband of his deceased daugh-
ter, Marian Weaver Downes, and (c) the *limited*

amount of income he gave to the Kampmann grand-children.

Before analyzing Weaver's will it is well to state the clearly settled rules or canons of construction which are pertinent. In *McFadden Estate*, 381 Pa. 464, 112 A. 2d 148, the Court, quoting from *Lifter Estate*, 377 Pa. 227, 231, 103 A. 2d 670, said (page 467): " 'The intention of the testator is the pole star in the interpretation of every will and that intention must be ascertained from a consideration of the entire will, including its scheme of distribution as well as its language, together with all the surrounding and attendant circumstances: Lyle Estate, 374 Pa. 344, 97 A. 2d 830; Brumbach Estate, 373 Pa. 302, 95 A. 2d 514; Newlin Estate, 367 Pa. 527, 80 A. 2d 819; Anderson Estate, 373 Pa. 294, 95 A. 2d 674.' " See also: *Britt Estate*, 369 Pa. 450, 454, 455, 87 A. 2d 243; *Sowers Estate*, 383 Pa. 566, 570, 119 A. 2d 60; *Conlin Estate*, 388 Pa. 483, 131 A. 2d 117.

Weaver divided his will into numbered items or paragraphs. In Paragraph 2 of his will he gave and devised his homestead (in Merion) to his wife for life or so long as she remained unmarried, and upon her death or remarriage to his daughter, Phoebe Weaver Macklin, for her life or as long as she desired to use it as a home. In Paragraph 3 he gave and devised his house and lot in Ventnor, New Jersey, to his wife for life or so long as she remained unmarried, and at her death or remarriage, to his daughter, Phoebe Weaver Macklin, in fee simple. He made a similar bequest in Paragraph 3 of the household goods and furnishings in his Ventnor property.

In Paragraph 5 of his will, Weaver gave portraits of his wife and himself to his daughter, Phoebe Weaver Macklin; his jewelry and personal effects to his wife, if living, or if not living, to his daughter, Phoebe

Weaver Macklin; and his household goods, china, silver-
ware, automobiles, etc., to his wife so long as she oc-
cupied his homestead at Merion as her home, and upon
her death or remarriage, he bequeathed this personal
property absolutely to his daughter, Phoebe Weaver
Macklin.

In Paragraph 6 of his will, Weaver gave and de-
vised his property at 204 Merion Avenue, Merion, to
his daughter, Phoebe Weaver Macklin, in fee.

We then come to the important crucial portion of
his will which is contained in a very long paragraph
numbered 7. In Paragraph 7, testator gave his entire
residuary estate to his trustees, in trust, with the usual
trust provisions about collection of income and pay-
ment of taxes, but with the additional provision that
the trustees should pay all taxes and assessments of
every kind and nature which may be levied or assessed
against his property in Merion and his property in
Ventnor, with directions to adequately insure said
properties and their contents and to keep the said real
estate in good order and repair, whether the same was
occupied by his wife or by his daughter. Paragraph
7 then provides as follows:

"B. (1) From the net income of my residuary
estate my said trustees shall pay during each year,
commencing with the date of my death, an amount up
to but not exceeding the sum of one hundred thousand
dollars ($100,000.) to my wife, Ida D. Weaver, so long
as she shall live and remain unmarried, and I give and
bequeath, during the time when my wife shall be re-
ceiving the income as above provided, all of the re-
maining part of the net income of and from my residu-
ary estate to my daughter, Phoebe Weaver Macklin.

"(2) (a) Upon the death or remarriage of my
wife, Ida D. Weaver, I direct my trustees to pay dur-
ing each year the net income of my residuary estate

as follows: One-half of the said net income I give and bequeath to my daughter, Phoebe Weaver Macklin, for and during the term of her natural life, and upon her death to pay one-half thereof to John F. Macklin for and during the term of his natural life, or so long as he shall remain unmarried, and upon the death or remarriage of the said John F. Macklin, then to pay the income theretofore paid to him as hereinafter provided for the remainder of the share of my daughter, Phoebe Weaver Macklin.

"(b) Upon the death of my daughter, Phoebe Weaver Macklin, I direct my trustees to pay the remaining one-half of her share of income to her children then living and the issue of such of her children, if any, as may have died, in equal shares, per stirpes and not per capita, for and during the life of each of such beneficiaries, or so long as the payment of such income shall be permitted under the laws of the Commonwealth of Pennsylvania in force at the time of my death. Upon the death of each of such beneficiaries, the issue of Phoebe Weaver Macklin, or upon the earlier termination of said trust as hereinabove provided, then I direct that the portion of the principal of my residuary estate represented by the proportion of income, which such issue of my daughter, Phoebe Weaver Macklin, shall then be entitled to receive, including the proportion of income payable to such issue after the death or remarriage of John F. Macklin, shall be paid over by my trustees to said respective beneficiaries if living, and if dead then to the issue of such respective beneficiaries per stirpes absolutely; and in the event of failure of issue of any such beneficiary, to pay said principal share to the then living issue of my said daughter, Phoebe Weaver Macklin, in equal shares per stirpes.

134

"(3) (a) The remaining one-half of the net income of and from my residuary estate, after the death of my wife, Ida D. Weaver, or her remarriage, I direct my trustees to pay over as follows: To the children of my deceased daughter, Marian Weaver Downes, and the survivors and survivor of them, an amount annually which shall be deemed necessary and proper for their maintenance, support and education until each shall attain the age of twenty-five years, which amount shall be determined annually by a writing lodged with my trustees by the testamentary guardians named in this Will for such children of my deceased daughter. If any one of such children of my deceased daughter shall marry either before or after reaching the age of twenty-five years, my trustees are hereby directed to pay out of the one-half of the income of the residue of my estate disposed of in this paragraph of my Will, such amount as shall be deemed necessary and proper by the persons named as the testamentary guardians of such child for the expenses and costs attending such marriage, and, if deemed desirable by such guardians, the amount required for the purchase of a proper home for such child, which if purchased I give to such child absolutely.

"(b) I direct my trustees to pay out of the balance of the aforesaid one-half of the income of my residuary estate during such time as shall elapse before my said grandchildren reach the age of twenty-five years, so much of the income from the said one-half of the total income of my residuary estate as shall remain after the payments herein provided for my said grandchildren, to the Trustees of the University of Pennsylvania to be expended by them for such purpose or purposes of the Medical Department of the University of Pennsylvania as each year shall be approved in writing by my friends, Dr. Alfred Stengel and William

Clarke Mason, or the survivor of them. This bequest for the benefit of the Medical Department of the University of Pennsylvania shall apply only to the remainder of each third share of such income and only until my said grandchildren, children of my daughter, Marian Weaver Downes, shall severally attain the age of twenty-five years.

"From and after the time when each of my said grandchildren shall attain the age of twenty-five years, and for and during the period of their natural life, I direct my trustees hereinafter named to pay to such grandchildren annually from the income available from the aforesaid one-half of the total income of my residuary estate, subject to the prior charges hereby imposed upon it for the maintenance, support and education of my grandchildren under the age of twenty-five years, a sum which in the uncontrolled discretion of my said trustees, and the survivor of them, shall be necessary and proper for the support and maintenance of such of my grandchildren, but in no event shall such sum exceed the payment of twenty-five thousand dollars ($25,000.) annually for each of such children. It is my will, and I hereby provide, that at any time during the life of my said grandchildren after they shall have attained the age of twenty-five years it shall be deemed necessary or desirable that such grandchild shall receive a payment from the principal, I authorize my trustees in their uncontrolled discretion to pay to such grandchild an amount of principal which shall be deemed necessary or proper for the business or other uses of such grandchild, provided, however, no one payment nor the aggregate of all payments during the life of such grandchild shall exceed the sum of fifty thousand dollars ($50,000.) of principal.

"It is my will, and I hereby direct, that no moneys, either principal or income, shall be paid over by any

of my grandchildren, children of my deceased daughter, Marian Weaver Downes, to their father, Robert S. Kampmann, nor shall they permit him to benefit, directly or indirectly, from any bequest made to them in this my Will, and any such beneficiary violating this provision shall thereupon cease to be entitled to receive any income or any payments whatsoever herein provided for such beneficiary.

"(c) Until the death of the survivor of my grandchildren, children of my daughter, Marian Weaver Downes, I direct my trustees to pay all of the remaining part, if any, of the aforesaid one-half of the annual net income of my residuary estate from which payments are directed to be made to my said grandchildren, to the children of my said grandchildren in equal shares per capita and not per stirpes, or if there be no such issue of any of my said grandchildren, then to pay such remaining part to the trustees of the University of Pennsylvania as provided in paragraph 7 (3b) of this Will. Upon the death of the survivor of my said grandchildren, then I direct that the principal of one-half of my residuary estate shall be distributed equally among the children then living of my said grandchildren, share and share alike, per capita and not per stirpes."

Two Kampmann grandchildren, Robert S. Kampmann, Jr. and Elizabeth Kampmann Brown, each withdrew from principal $50,000—Elizabeth Kampmann Brown, $50,000 on June 6, 1951; Kampmann, Jr. $20,000 on July 16, 1951, and the balance on January 22, 1954 (after Ida Wark's death). Marion Horner, the remaining Kampmann grandchild, has as yet made no request for $50,000 principal under the aforesaid provisions of the will.

It is clear from the language of the will that the testator created *one entire* residuary trust. Neverthe-

less, he thereafter divided that trust for all practical purposes (except for investment and administrative purposes) into two equal shares—one-half for the Macklin line and one-half for the Kampmann line, and never did he give the Macklin line any interest in the income or principal of the Kampmann line, or vice versa. Weaver's dispositive provisions for the Macklin line and for the Kampmann line, both as to income and principal, were entirely different. The duration of the trusts of income and of principal in the Macklin line was entirely different from the duration of the trusts for income and for principal in the Kampmann line. The beneficiaries of income as well as the amounts or shares they were entitled to receive were entirely different in the Macklin line from that in the Kampmann line; and the beneficiaries of principal in the Macklin line and the time when they became entitled to principal were entirely different from those in the Kampmann line. No Macklin had any interest in the Kampmann share of income or principal, and no Kampmann was entitled, under the provisions of the will, to receive any income or principal of the Macklin share; there were not even any cross remainders. This differentiation becomes even clearer by a specific minute analysis of the residuary provisions, which are contained in a lengthy Paragraph 7 of his will.

## Macklin Line

Testator, in Paragraph 7.B.(1) gave his daughter, Phoebe Weaver Macklin, all of the net income from his residuary estate over and above $100,000 annually, which he directed should be paid to his wife.

In Paragraph 7.B.(2)(a), testator gave, upon the death or remarriage of his wife, one-half of the net income of his residuary estate to his daughter, Phoebe Weaver Macklin, for life, and upon her death, one-half thereof to her husband for his life or remarriage, and

the remaining part of this half of the income, and upon the death of Phoebe's husband, all of the one-half of the net income of the residuary estate to Phoebe Weaver Macklin's then living children and then living issue of her deceased children, *per stirpes,* "for the life of each of such beneficiary or so long as the payment of such income shall be permitted under the laws of Pennsylvania." Testator then provided in Paragraph 7.B.(2)(b) that *upon the death* "of each of such beneficiaries . . . *the portion of the principal* of my residuary estate represented by the proportion of income which such issue of my daughter, Phoebe Weaver Macklin, shall then be entitled to receive . . . shall be paid over . . . to said respective beneficiaries if living and if dead, then to the issue of such respective beneficiaries, *per stirpes,* absolutely." If there was any failure of issue of any beneficiary, the trustees were directed to pay "said principal share" not to the Kampmann line, but "to the then living issue of my said daughter, Phoebe Weaver Macklin, in equal shares, *per stirpes."*

### Kampmann Line

Testator gave the remaining one-half of the net income of his residuary estate, after the death or remarriage of his wife, as follows: "7.(3)(a). To the children of my deceased daughter, Marian Weaver Downes [Kampmann], and the survivors and survivor of them, an amount annually which shall be deemed necessary and proper for their maintenance, support and education until each shall attain the age of twenty-five years, . . . ." The testator then directed that if any of the Kampmann children married before or after attaining twenty-five years, the trustees should pay the expenses and cost attending such marriage, and an amount for the purchase of a proper home for such child *"out of the one-half* of the *income* of the residue

of my estate disposed of in this paragraph of my Will."

(b) With respect to the balance of the aforesaid one-half income of his residuary estate, prior to the time when each Kampmann grandchild attained the age of twenty-five years, testator gave *said balance* of income, not to his grandchildren or great-grandchildren in the Kampmann line, but to the Trustees of the University of Pennsylvania. As each Kampmann grandchild attained the age of twenty-five years, testator directed his trustees to pay "from the aforesaid one-half of the total income of my residuary estate, . . . [after payments for maintenance, support and education] a sum which in the uncontrolled discretion of my said trustees, . . . shall be necessary and proper for the support and maintenance of" each such grandchild, but in no event to exceed $25,000 annually. Testator then made the provision which raises the present controversy. "At any time during the life of my said grandchildren" [after the Kampmann grandchild attained the age of twenty-five years] "I authorize my trustees in their uncontrolled discretion to pay to such grandchild an amount of principal which shall be deemed necessary or proper for the business or other uses of such grandchild, . . ." provided all such payments shall not exceed the sum of $50,000 of principal. Testator then directed that no moneys, either principal or income should ever be paid over by any of the Kampmann grandchildren to their father, directly or indirectly, and any such payment would result in forfeiture by that beneficiary of any income or any payments under testator's will.

It is startlingly apparent how different these provisions for payment of limited amounts of income to Kampmann grandchildren were from the provisions for

payment of all the (one-half of the) income to the Macklin grandchildren. Equally different is the provision about the duration of the trust and the payments of principal. Testator provided, after provisions for payment of income to the University of Pennsylvania, on failure of issue of each Kampmann grandchild: "(c) Upon the death of the survivor of my said [Kampmann] grandchildren, then I direct that the principal of one-half of my residuary estate shall be distributed equally among the children then living of my said grandchildren, share and share alike, per capita and not per stirpes." In other words, the Macklin great-grandchildren, upon the death of their respective parent, received absolutely their respective share, per stirpes, of the principal from which their parent had been receiving the income; whereas, the great-grandchildren in the Kampmann line received their share of the principal, not upon the death of their respective parent, but (if living) at the death of the survivor of all the Kampmann grandchildren, and then per capita and not per stirpes.

The Kampmann grandchildren contend that the discretionary gift of $50,000 principal to each of them was made in order to equalize the houses which their aunt, Phoebe Weaver Macklin, was given by the testator. It seems to us the more plausible reason for testator's clearly expressed inequality is that the testator, for undisclosed personal reasons, apparently cordially disliked Kampmann and preferred his daughter, Phoebe Macklin and the Macklin line to the Kampmann line. The testator had provided for the maintenance, support and education of the Kampmann children and the cost and expense of their marriage and the purchase of a home, but had limited their income to $25,000 a year. Under such circumstances, it seems natural that he would want to give each of them out of their family

share of the principal, $50,000, if, in the discretion of the trustees, it was necessary or desirable for business or other purposes, since they could not save out of $25,000 income a year as much as the Macklins could out of their unlimited income. The *inequality* between the two lines was the carefully considered intent and clearly expressed will of the testator, and furnishes no ground for a construction of the will in order to restore equality to the Kampmanns.

Notwithstanding the fact that the testator created *one* trust of his residuary estate, it is equally clear that his general as well as his dominant paramount intent was to divide that trust into two parts—a part or share for the Macklin line and a part or share for the Kampmann line. Moreover, the Kampmanns' construction of the will would nullify the testator's general plan or scheme of his will and would particularly negate his provisions in 7 B (2) that as each Macklin grandchild died, his or her issue should *forthwith receive* a share of the principal corresponding to the share of income which their parent had been receiving. The Kampmann construction would require Macklin grandchildren to repay principal which they had received, if any Kampmann, subsequent to a Macklin death, demanded and received $50,000 principal. In the alternative, if, for example, one or both Macklin grandchildren died (as could easily happen) years before any or all of the Kampmann grandchildren received their $50,000 of principal, the Court would have to set aside $150,000 of principal out of the entire principal of the trust and hold the same intact *until the death of the last survivor of the Kampmann grandchildren.* This flies directly in the teeth of the testator's language disposing of principal to each Macklin great-grandchild and his clearly expressed scheme of giving to each of his Macklin great-grandchildren their share per stirpes

of the principal of the residuary estate, upon the death of their respective parent.

For these reasons we conclude that the share of principal which is payable, under the clearly expressed provisions of Weaver's will, to the Macklin great-grandchildren upon the death of their respective parent is not to be reduced by the $50,000 of principal which has been paid to Elizabeth Kampmann Brown and to Robert S. Kampmann, Jr.

Decree reversed; each party to bear their respective costs.