## Weaver Estate

*W. Wesley Nagle* of *Morgan, Lewis & Bockius* and *Frederick J. M. LaValley,* for accountant.

*Richard J. Ruth* of *White and Williams,* for Kampmann beneficiaries.

*James J. Convery* of *LaBrum & Doak,* for Macklin beneficiaries.

*Roland Fleer* and *William L. Huganir,* guardians ad litem.

TAXIS, *J.,* January 29, 1976 — The reason or purpose for the filing of the account is the request by the Kampmann beneficiaries that this trust be divided into two separate trusts for investment purposes, one for the Macklin line and one for the Kampmann line. Such division will cause important questions to arise, relating to the proper method to be used in computing the amount of principal to be allocated to each trust, and in computing interim distributions of income, after taking into account interim principal distributions of $150,000 from the Kampmann share. . . .

Preliminarily, it should be noted that all parties agree that the trust be divided into two trusts. Question no. one relates to the proper computation of principal of each family share, after giving effect to the prior principal distributions from the Kampmann share. The second question, a corollary of the first, deals with the problem of the computation of interim distributions of income, brought about by fluctuations in the value of corpus and income which always create difficulties where, as here, the trust continues for a considerable period of time (testator died in 1934).

Broadly speaking as to the methods of calculation, two are proposed here. One is called the "fixed share" method, wherein the shares of the residue are computed as a percentage of the whole and that fixed percentage is applied consistently to interim distributions of income and principal and also when the trust is divided, simply reducing each share so established by the value of any interim distributions made. The other is termed the "changing fraction" method, in which the residuary proportions are computed as a percentage of the whole on the date of each distribution. It has been said that the chief difference is that where the "fixed share" method is used appreciation and depreciation of estate assets are shared in by the distributed assets, in effect, even though extracted from the corpus, but not where the "changing fraction" method is used. Cf. Gentle Est., 22 Fiduc. Rep. 352 (1972). The use of changing fractions here would increase the Macklin share by about $60,256.

The trustee in its brief has set forth this question, and its suggested solution, as follows: Pursuant to the terms of Paragraph 7B (3) (b) of the

will, the trustee made discretionary distributions of principal to the three grandchildren in the Kampmann line in the amount of $50,000 each, such distributions having been made as follows:

| To: | Elizabeth K. Blakemore | |
|---|---|---|
| | on 6/6/51 | $50,000 |
| | Robert S. Kampmann, Jr. | |
| | on 7/27/51 | 20,000 |
| | on 1/22/54 | 30,000 |
| | Marion Kampmann Horner | |
| | on 12/26/57 | 6,000 |
| | on 1/27/58 | 44,000 |

On September 30, 1957, the Supreme Court (Weaver Est., 390 Pa. 128, 134 A.2d 675 (1957)), held that these discretionary distributions of principal were to be charged against only the Kampmann share of the trust rather than against trust principal generally. The trustee now proposes to divide the trust into two parts, as follows: The $150,000 of principal already paid to the Kampmanns will be added back for calculation purposes to the current value of the trust principal; the principal as thus augmented will be divided into a one-third share representing the current Macklin line, * to be awarded back to the trustee in further trust, and a two-third share representing the Kampmann line, this to be reduced by the $150,000 in advances and the balance likewise awarded back to the trustee. As noted, this is referred to as the "fixed share" method.

The difficulty with the fixed share method is that this $150,000 is treated as though distributed at the time the trust is divided, and not when it

---

*1. Half of the Macklin share has been distributed by reason of the death in 1953 of one of the Macklin grandchildren.

actually went out. This is the seat of the inequity here. This $150,000 was *no longer* a part of the corpus of the trust after January 27, 1958 (and earlier), when it went out and, therefore, could not and should not share in subsequent increases in principal revaluations, or be subject to decreases in value. While the sums may in fact have been spent by the beneficiaries, they also may have appreciated or depreciated in the hands of the beneficiaries, and should not be allowed to appreciate or depreciate again in the hands of the trustee. In this trust, the corpus has increased from $4,369,706 in 1958 to $9,882,504 on June 24, 1975, or over 100 percent. The changing fraction method correctly and equitably apportions and limits this appreciation to that principal which, in fact, increased by this amount. The court rules that the changing fraction method shall be used to compute principal shares in dividing this trust, the computation to be set forth in the schedule of distribution hereinafter directed to be filed.

It should be stated that the "changing fraction" method is not mandated by Gentle Estate, supra. Gentle Estate turned on the question of whether the "changing fraction" method was inherently unfair, not whether it was mandatory. The court, in that case, found the "changing fraction" method to be fair. In other cases, the "fixed share" method might well be the more proper.

Question no. two relates to the trustee's use of the "fixed share" method also in allocating income between the Macklin and Kampmann lines. Counsel for the Macklin line, in advocating the "changing fraction" approach, argues that a portion of the income received by the trust between 1958 and 1974 was improperly distributed as between the

Macklin and Kampmann lines. The trustee, in making annual distributions of income, has added to the income actually received a figure representing the income which would have been earned, at the *average rate of return* for the trust that year, on the $150,000 of principal paid out to the Kampmanns. The trustee has then allocated such augmented income of one-third to the Macklin line and two-thirds to the Kampmann line with the Kampmann portion then being reduced by the income arithmetically attributable to the prior principal distributions.

We find no merit to the argument made by the trustee and the Kampmanns that in 1958, the Macklin group approved and subsequently have acquiesced in the use of the fixed share method of allocating income. On the contrary, the submitted letters and the relevant testimony must be read in the context in which it was given, namely an effort on the part of counsel to work out suitable figures to conform with the ruling of the Supreme Court in 390 Pa. 128. There was no issue at that time of division of the principal. That issue has been presented for the first time in this proceeding. Furthermore, no indication appears that whatever agreement was reached by counsel in 1958 had any relevance or bearing upon future distributions of income or the methods of computation.

For the reasons set forth concerning the division of principal by the changing fraction method, the same method must be applied to the computation of income and these calculations also shall be set forth in the schedule of distribution. The sum of $22,722 additional income is due the Macklin share when the changing fraction method is used, and it is herewith awarded.

A final question has been presented, and relates to whether great-great-grandchildren in the Kampmann line have any interest in the income of this trust. On August 19, 1974, Robert S. Kampmann, third, a great-grandchild of the testator and an income beneficiary, died leaving two minor children, both of whom had been adopted by their mother's second husband. Paragraph seven B(3)(c) of the will provides that until the death the survivor of the Kampmann grandchildren, the excess net income of the Kampmann share of the trust shall be paid "to the children of my said grandchildren in equal shares per capita and not per stirpes." The question arises whether issue more remote than children of the Kampmann grandchildren, i.e., great-great-grandchildren of the testator, succeed to any interest in the income of the Kampmann share. The trustee takes the position that the language should be read literally, thus precluding issue more remote than children of grandchildren from succeeding to any interest. This is a reasonable position, since income is to be distributed per capita and not per stirpes. Thus, issue more remote than children of grandchildren do not qualify as beneficiaries. The court rules that no descendants in the Kampmann line more remote than great-grandchildren of the testator have any interest in the income of the trust. . . .

And now, October 21, 1975, this adjudication is confirmed nisi.

\* \* \* \* \*

## OPINION SUR EXCEPTIONS

By an adjudication dated October 21, 1975, this court determined that the "changing fraction" method should be applied in apportioning the prin-

cipal of the trust between the two lines of relatives who are the beneficiaries. The occasion of this ruling was the division of the trust into two trusts, one for the Macklin line of beneficiaries and one for the Kampmann line. There had been prior principal distributions from one line, but not the other, and the court determined that it was required, for an equitable apportionment, to regard the value of the distributions when made as of the time of distribution instead of the time of the division of the trusts.

No exception has been filed to this determination, but in the adjudication the court followed the usual rule that "income follows principal" and ordered the same method of apportionment to be applied to income. This was incorrect. In the case of principal, the trust had been administered as one trust, so that the door was open, at the time of the division into two trusts, to apply the rule deemed to be most equitable to the division, without causing any difficulty to the beneficiaries. In the case of income, this was not so. The effect of the court's ruling on income was to require the beneficiaries from one line to repay to the beneficiaries of the other line a sum in excess of $22,000. For this reason, objection has been taken by the beneficiaries in the Kampmann line, on the grounds that this in fact applies the rule retroactively, and with this conclusion we agree. The exceptions of the Kampmann line to the redistribution of income which has already been distributed are sustained.

Both technical and equitable reasons exist for this. The technical one is that the fixed share method of income distribution was implicitly agreed upon by the parties after this trust had been in the Supreme Court on other issues. See Weaver

Estate, 390 Pa. 128, 134 A.2d 675 (1957). At least since 1959 all parties have received income based on the fixed share method, and timely income statements have been furnished to all parties in interest ever since. Exceptions also point out the desirability of some certainty in the distribution of income, which becomes the property of the beneficiaries at distribution. The equitable reason, more important, is that the Macklin line is seeking restitution of income from the Kampmann line, and while counsel for exceptants concedes that such restitution may be directed under certain circumstances, he correctly points out that 3 Scott, Trusts, in §254.2 (3d ed. 1967), says that the ultimate ". . . question is whether under all the circumstances it is inequitable to require the beneficiary to make restitution; and one of the circumstances which is of importance is the fact that the person seeking restitution is or is not responsible for the payment."

Obviously, the beneficiaries were not totally responsible for the pattern of payment. The trustee made the computations under the 1958 agreement, or as it understood it. But the beneficiaries accepted the payments, and never raised any question until the present accounting; and there it was raised only in connection with the main issue, which was the division of principal. By an adjudication of this court in 1958, the former method of dividing income was approved. Certainly, the trustee was entitled to follow the same method in the future, especially in the absence of any indication that anyone in the Macklin line was in any way induced to believe that income distributions were not being properly computed.

It would be inequitable, in the absence of any

indication of fraud or serious mistake, to require the repayment of income distributions heretofore made in reliance upon the law which was applicable to this trust. If income distributions made as long as fifteen years ago can be recovered by simply showing that a decision of the trustee in computing such distributions might have been different, the objective of certainly based upon an accounting and adjudication would be seriously impaired. So, also, would the authority and ability of counsel to make decisions binding their clients, since such a ruling in effect would mean that the 1958 agreement between counsel, as well as the accounting and schedule of distribution as approved by this court following it, were of little effect. Following an extended reconsideration of our prior ruling, therefore, the exceptions to the. adjudication are sustained, and the award of $22,722 of additional income to the Macklin line, from the Kampmann line, is stricken.